### *In the matter of the petition of* JANE HUNTER.

---

The court may, in a proper case, where there is a covenant on one side and no mutuality, decree a specific performance of it.

Where there is a covenant in a lease allowing a lessee to purchase the fee at a specified sum, it is a fair inference, in a bill filed for a specific performance, that the rent was fixed at the amount reserved in the lease as an inducement to purchase the fee under such covenant.

The words "shall have liberty *to purchase*," contained in a covenant, are to be construed as giving the right to a clear title, free from a claim of dower and all other incumbrances. It means, the whole title. And in a case of this kind, the lessee, who insisted upon a performance of the covenant, was decreed to bear all the costs.

---

JOHN HUNTER granted to Daniel Pearson a lease for seven years from the first day of May, 1828, of a house and lot of ground on the corner of Pearl and Collect streets, in the city of New York, at the rent of $500. The lessee covenanted in the indenture of lease that he would, before the first day of August, 1828, erect, or cause to be erected on the said lot, a good and substantial brick house of certain dimensions, fire proof in all respects, according to the regulations and ordinances of the corporation of the city of New York. And the same lease contained (among other things) the following covenant on

*May 9. 1831.*

*Specific performance of leasehold.*
*Word, "Purchase."*
*Mutuality.*
*Dower.*
*Costs.*

1

the part of the lessor, John Hunter, his heirs, executors and ad-ministrators: "And that the said party of the second part, Daniel "Pearson, his executors, administrators and assigns, at any time "within three years after the first day of May, in the said year "one thousand eight hundred and twenty-eight, *shall have liberty* "*to purchase* the said lot, buildings, tenements and appurtenances "thereon or thereunto belonging, by paying the said party of the "first part, his heirs, executors, administrators or assigns therefor "the sum of six thousand dollars."

MR. *J. H. Lee* this day presented to the court the petition of Jane Hunter, widow of the said John Hunter. It set forth, the above lease to Daniel Pearson; the death of John Hunter; the taking out of letters of administration, by her, as his widow, to her husband's estate and effects; that the fee in the premises, so leased to Daniel Pearson, was in the said John Hunter at the time of his death; that the petitioner was entitled to dower therein as his widow; that he had left six children, who were all infants under the age of twenty-one years, and she had been appointed by the surrogate of the city of New York the guar-dian of their persons and estate. The petition further shewed, she was liable at law upon the covenants of her late husband; that the said Daniel Pearson, on the first day of April, 1831, had given notice to her and the heirs of the said John Hunter, of his insisting upon his right to purchase the premises described in the lease, pursuant to the covenant contained therein. She submitted herself to the advise and direction of the court, and stated her willingness, in order to facilitate the proceedings and remove all embarrassments, to release her dower right. The petitioner prayed (if on hearing all parties concerned, the court should be satisfied a specific performance of the covenant ought to be decreed) that it would, at the costs and charges of the person who ought of right to pay the same, order and direct such a conveyance of the premises, so leased to the said Daniel Pearson in compliance with his notice and demand, as might be meet and proper to be executed to him, on his paying the consideration specified in the covenant, and on such other terms and conditions as should be agreeable to equity and good con-

science. Also, in case of such decree, that one-third of the purchase money should be invested for the benefit of the petitioner on account of her right of dower; and the remainder paid over to the guardian of the children, according to the practice of the court.

Upon this petition, an order was entered, whereby it was referred to one of the masters to enquire into and ascertain the title to the said premises; the nature and amount of incumbrances thereon; the amount of surplus of the purchase money which would remain, after paying off such incumbrances; the proper disposition to be made of such surplus; the names of suitable persons to be guardians of said infants in relation to such surplus; the amount of the security and the competency of the sureties to be furnished by such guardians; and that the master settle the form of the release of dower of the petitioner, and the necessary conveyance to Daniel Pearson or his assigns. The question of costs, and all other matters, were reserved.

The facts of the petition were found by the master; and also, a good title. It likewise appeared in his report (by the testimony of witnesses, and amongst other things) that the said Daniel Pearson had erected, in 1827 or 1828, and previous to the first day of August, in the latter year, an additional good and substantial two story brick house, fire proof in all respects, according to the regulations and ordinances of the corporation of the city of New York; and also a smaller fire proof building of brick which served to connect such additional brick house with the old house. Also, that the said Pearson had been distrained upon for rent, and sometimes did not discharge his aforesaid rent until the third month after it became due; and a part of a quarter's rent remained still unpaid: but that there had always been property thereon liable to distress and sufficient to satisfy any arrear of rent owing by him.

Upon the coming in and confirmation of the master's report, an order was entered, directing a conveyance to Daniel Pearson. But it did not state whether Jane Hunter's dower should come out of the purchase sum of $6,000, nor whether Pearson was to take a conveyance of the premises subject to her right of dower.

1831.

IN THE MAT-
TER OF JANE
HUNTER.

July 18.

On a subsequent day, the infant children of John Hunter, by Mr. *William Van Wyck* as their guardian *ad litem*, petitioned for a rehearing. It was granted.

Mr. *J. H. Lee*, for the widow Jane Hunter.

Mr. *W. Van Wyck*, as counsel and guardian *ad litem* for the infant children.

A bill for a specific performance is addressed to the sound discretion of the court in the exercise of its extraordinary jurisdiction: *St. John* v. *Benedict*, 6 *J. C. R.* 111., and *Seymour* v. *Delancy, ib.* 222. And it will not be decreed in the following cases: 1. Where the remedy is not mutual, or one party only is bound by the agreement: *Parkhurst* v. *Van Cortlandt*, 1 *J. C. R.* 282.; *Benedict* v. *Lynch, ib.* 370. 2d. Where the consideration is inadequate: *Osgood* v. *Franklin*, 2 *J. C. R.* 23. The consideration in this case appears to be inadequate from a comparison of the rent with the amount of the purchase money. 3d. When a condition precedent has not been performed: *Hatch* v. *Cobb*, 4 *J. C. R.* 559, and *Kempshall* v. *Stone*, 5 *ib.* 194. The master's report clearly shows the default of the lessee. The rent was not paid on the day it became due.

The receipt of the rent by Jane Hunter is not a waiver of the default: *Jackson ex dem. Blanchard* v. *Allen*, 3 *Cow. R.* 220. No act, consent or admission of Jane Hunter, as administratrix of her husband, or guardian of the children, in relation to the real estate, can bind the infants against their interest.

If the lessee is entitled to a conveyance for the consideration of $6,000, he must take it subject to the widow's right of dower. Under the covenant contained in the lease, the lessee can require from the lessor or his heirs nothing more than a quit-claim deed: *Matter of Ellison*, 5 *J. C. R.* 261; *Van Eps* v. *Mayor &c. of Schenectady*, 12 *J. R.* 436; *Ketchum and Sweet* v. *Evertson*, 13 *ib.* 359. The petitioner, Jane Hunter, was not a party to the lease. The infants are not bound to pay any costs, but the lessee must bear them.

Mr. *H. M. Western*, for Daniel Pearson. Such of the cases, which have been cited, as would seem, at first, to bear upon the matter, are cases at law. *Van Eps* v. *Mayor, &c. of Schenectady*, relates to a corporation, and is therefore not in point. The same may be said of *Ketchum and Sweet* v. *Evertson*, as it relates to a trustee. Ours is a case where a widow has an interest; and she voluntarily offers to join. And, even if she did not, this is a matter which should be litigated between her and the children. The intention was, that Pearson should be allowed a clear title, if he purchased; and, the intention must govern. He is entitled to a conveyance, clear of dower and other incumbrances. He ought not to bear the costs, for he has not caused them.

THE VICE-CHANCELLOR. (After adverting to the circumstances of the case.) The first objection taken in this case is, that the lessee has not performed the precedent conditions of the lease, by erecting fire proof buildings and paying the rent. I am of opinion, however, he has substantially done so.

In the next place, it is said, the covenant to sell is not mutual: the lessee not being bound to purchase; and, that as this is a "one-sided" agreement, the court will not decree a specific performance. The cases of *Parkhurst* v. *Van Cortlandt*, 1 *J. C. R.* 282, and *Benedict* v. *Lynch, ib.* 370, have been referred to as establishing this point. Chancellor Kent there intimated that such was the rule; but, in a subsequent case in the court of errors, *Clason* v. *Bailey*, 14 *Johns. R.* 484, he had occasion to review that opinion, which he found to be erroneous, and admits that the point is too well settled the other way to be questioned. The court may, therefore, in a proper case, where there is a covenant on one side and no mutuality, decree a performance. Besides, in a case like the present, it may be peculiarly proper. The rent may have been fixed at $500, as an inducement to the power of purchasing the property. This is a fair inference.

It is also contended, that if the lessee is entitled to become the purchaser, at the sum of $6,000, the sale must be subject to the dower right of the widow of the lessor.

*Margin notes:* 1831. IN THE MATTER OF JANE HUNTER. July 27.

1831.

IN THE MAT-
TER OF JANE
HUNTER.

This, however, is not so. The fair construction of the cove-
nant that the lessee should be at liberty *to purchase*, by paying
$6,000, must mean the whole title. The case of *Ketchum* v.
*Evertson*, 13 *J. R.* 358, is different. In that case the covenant
was, to give a deed. So also in the case of *The Corporation of
Schenectady* v. *Van Eps*, 12 *J. R.* 436. The matter now before
the court is more like the case of *Jones* v. *Gardner*, 10 *J. R.*
267; where the covenant was, to give a sufficient deed to
vest a title in the defendant. The court held the wife must join
in the deed; and that a covenant to convey the title meant the
legal estate in fee, free and clear of all valid claims, liens, and
incumbrances. But a doubt, at first, arose in my mind:—Sup-
pose the lessor was living, and a bill was filed against him for a
deed, how could the court compel a conveyance, free from the
dower of the wife, in case she refused to join her husband in
the deed? In such a state of things, there would be a difficulty.
According to some old cases, if the husband agreed to convey
even his wife's estate, the court would compel him to perform
in *specie*, because it was presumed he had his wife's consent.
There are instances of the husband's being committed to prison
until the wife should convey; but, on making it appear that he
could not prevail on her to join in the deed, the court, from
necessity, discharged him. Sugden on Vendors, 151. Lord
Eldon, however, in *Emory* v. *Ward*, 8 *Ves.* 505, expres-
sed a strong disinclination to follow that doctrine. He shows
it would be " compelling the husband to compel his wife" to
execute a deed or to levy a fine; which are voluntary acts.
And the same doctrine has undergone a thorough examination
by Sir Thomas Plumer, V. C., in the case of *Howell* v. *George*,
1 *Madd. R.* 1. In that case, a specific performance was re-

*And see Mar-
tin* v. *Mitch-*
*ell*, 2 *Jac. &
W.* 425—6.

fused. The consequence of such a refusal is, however, to leave
the husband exposed to an action at law for damages, upon his
covenant. And so here, the lessee has a right of action against
the infant heirs upon the covenant of their father. Is it, then,
proper to expose them to this consequence? I think not; more
especially as the difficulty can here be obviated. For the

*Tabele* v.
*same*, 1 *J. C.*
*R.* 45.

widow has placed herself within the power of the court by her
petition, and can now be compelled to join in the conveyance;

and one-third of the money can be set apart for her benefit. It is better the lessee should take the property.

I do not consider there is such an inadequacy of price shown in this case, as would justify me, on that ground, in refusing a specific performance. But I think the lessee, in taking the property, must bear all the costs of the proceeding, so that the infants may have the purchase money without diminution.