*Paige, J.
 

 The following objections are made by the respondent to the agreement for the sale of the lands at Haverstraw to the appellant, viz: 1.
 
 *221
 
 Henry Worrall was not authorized by a written power of attorney, under seal, to execute the counterpart, for the appellant, Noah Worrall. 2. The agreement was not executed by Henry Worrall, in the name of Noah Wor-rall, the principal. 3. After it was executed by Prall, essential alterations were made by Warner, his agent, at the request of Henry Worrall, without Prall’s authority. 4. The agreement not being binding on Noah Worrall, was not binding on' Prall, for want of mutuality, and, therefore, a specific performance ought not to be decreed. 5. The agreement was delivered, upon the express condition, that it should be subject to the sanction of Prall, and was, therefore, not binding on him, unless he subsequently approved and ratified it. 6. Prall expressly refused to ratify the agreement. 7. The delivery of the agreement to Henry Worrall was not an absolute deliv ery in law.
 

 The alterations which it is claimed by the respondent invalidated the agreement were the erasure of the word “January,” and inserting instead, “April;” the insertion of the name of Noah Worrall, in the blank left for the name of Henry Worrall, and the erasure of the words “this agreement,” and substituting therefor, “said deed.” This last alteration was made by Warner, Prall’s agent, at the request of Henry Worrall, at the time the counterpart was executed by the latter, and after the original had been executed by Prall. But it does not appear by the evidence, that it was made a ground of objection by Prall, when he, after the execution of the counterpart, refused to assent to the agreement; and both defendants omitted to complain of this alteration in their answers, or to set it up as a defence. Under the circumstances of this case, I think, they ought not now to be permitted to make this alteration an objection to the validity of the agreement.
 

 *The vice-chancellor decided correctly, in refusing them leave to amend their answers, to
 
 *222
 
 enable tliem to set up this defence. It would not be in furtherance of justice, to allow an amendment of the answers, by conforming them to the facts proved in relation to this alteration. (Code § 173.) This alteration did not essentially affect the rights of Prall, for, by an immediate execution and delivery of a deed of the premises, that portion of the purchase-money which was to remain on bond and mortgage, would at once have been on interest. The only effect of the alteration was, to provide that interest should commence at the date of the deed, instead of the date of the agreement. If Henry Worrall is correct in his recollection of his agreement with Prall, Warner was authorized in his behalf to make the alteration of substituting the words “ said deed,” for “ this agreement,” if there is no technical difficulty in the way, in consequence of the agreement being under seal.
 

 In relation to the other alterations which are complained of in the answer, I think, the evidence shows that they were made in the original agreement, before it was executed by Prall. Three witnesses swear that two blanks were left in the draft of the original agreement, one for the name of the purchaser, and the other for the month, on or before the first day of which the deed was to be executed. These witnesses swear that, at a meeting of Warner, Henry and Noah Worrall, for the settlement of the terms of the agreement, the blank for the name of the purchaser was filled with the name of Noah Worrall, by Warner, and the other blank was filled with “April,” by Noah Worrall, and that this was done before, the execution of the agreement by Prall. As to these facts, these three witnesses are contradicted only by Warner, and he does not profess to be positive, that the blank for the name of the purchaser was not filled, when the agreement was executed by Prall. If Noah WorralPs name was inserted in the agreement, as the .purchaser, before it was executed by Prall, there is
 
 *223
 
 nothing in the objection, that Noah Worrall’s name was inserted, without *the authority of Prall. There is not a particle of evidence in the case, showing or tending to show that Noah Worrall was irresponsible, or that he was not as desirable a purchaser as his father. There is nothing in the proofs, which warrants an imputation against either Henry or Noah Worrall, of an intent to perpetrate a fraud on Prall, by a substitution in the agreement of the name of Noah, in the place of Henry, as the purchaser. Henry Worrall swears that, in his negotiations for the purchase of the premises, he acted for and in behalf of Noah Worrall. Even if Prall received the impression that Henry Worrall was negotiating with him, on his own account, it is not possible to conceive, howv Prall could be either defrauded or prejudiced, by the substitution of Noah in the place of Plenry, as purchaser. At no time, does it appear, not even when it is said he declined a ratification of the agreement, that he objected to Noah as the purchaser, or expressed a preference in favor of Henry; and no good reason can be assigned, why he should prefer Henry to Noah as a purchaser. There is no evidence which shows that Prall did not know, when he executed the agreement, that Noah Worrall, whose name was inserted therein, as the purchaser, was the son of Henry Worrall. I cannot, therefore, believe that when Prall, according to the testimony of Warner, refused to sanction the agreement, after the counterpart had been executed, he so refused, because Noah Worrall was the purchaser.
 

 One of the points made by the respondent is, that the agreement was delivered to Henry Worrall, for Noah Worrall, upon condition that it should be subject to the sanction of Prall. Upon this question, there is a conflict in the evidence of the witnesses, Henry Worrall, Warner and Nixen. Henry Worrall swears that the delivery of the agreement executed by Prall was absolute and unconditional. Warner swears that when Henrv Worrall
 
 *224
 
 signed the counterpart, “Henry Worrall, for Noah Wor-rall,” he stated to Henry Worrall that that was too serious an alteration, and that it *must receive the sanction of Mr. Prall, before it could be binding, and that he could not deliver it, without PralPs sanction; and he states that he finally delivered the agreement to Henry Worrall, on the condition that it was subject to the sanction of Prall. Nixen swears that he was in Warner’s office, at the time of the execution of the counterpart by Henry Worrall, and of the delivery of the agreement to him; he states that Warner objected to the manner in which Henry Worrall signed the counterpart, and said to him, that he could not deliver it, except upon the condition that Prall agreed to it, and that when Warner delivered the agreement, he stated that it would be subject to the approbation of Prall. There is not an entire agreement of the evidence of Warner with that of Nixen. Warner, in substance, states that his objection was, that by the insertion in the agreement of the name of Noah Worrall, and the manner of signing the counterpart, Noah was made the purchaser, instead of Henry Worrall. Nixen swears that Warner’s objection was to the manner in which Henry Worrall signed the counterpart, and that this was the only objection which, according to his recollection, Warner made, at that interview between him and Henry Worrall. Warner swears that, at the same interview, he, in addition to the objection that Noah instead of Henry Worrall was made the purchaser, objected to at least two alterations which had been made in the agreement. Warner assigns no reason for his objection to Noah as the purchaser. If he was ignorant of the respective Christian names of the father and son, he, at least, must have known, that the son was a partner of the father, and a member of the firm of H. Worrall & Co.; at least, he does not deny such knowledge. If he
 
 *225
 
 honestly entertained objections to accepting the son as a purchaser, in place of the father, it is highly probable, that he would have stated what they were. If the objection was to the manner of the execution of the counterpart, and that should turn out to he a valid execution, binding upon Noah Worrall, the objection ought not now to avail *to make void the agreement.
 

 On a critical examination of the evidence of Warner and Nixen, it will appear, that the only objection made by Warner to the delivery of the agreement was, on the ground of the manner of its execution, or because it was executed for and in the name of Noah Worrall; and that the only condition subject to which the deli-' very was made was, that it should be subject to the ratification of Prall, in respect to Noah Worrall’s being the purchaser, or the manner of the execution of the counterpart. If Noah Worrall was named as the purchaser in the agreement, when Prall executed it, the latter had no right to object to his being the purchaser. And if the counterpart was so executed as to give Prall a remedy against Noah Worrall, for a breach of the agreement on his part, he ought not, in equity, to be permitted to avail himself of an idle objection, as a-means of avoiding the performance of his contract.
 

 In looking carefully into all the evidence in this case,' I am constrained to believe, that the true and only reason which influenced Prall in refusing to perform the agreement, was an offer from Munn of a higher price for the land than was agreed to be paid by the appellant. I am aware, that Warner swears that he did not himself inform Prall of the offer of Strong, the son-in-law of Munn, to purchase the property, before Prall refused to sanction the agreement; but he omits to swear that Prall had not, previously to that time, obtained this knowledge from some other person, or that Munn had. not previously made to Prall a direct application to
 
 *226
 
 purchase the property. It was the interest of Warner, to break up the agreement with the appellant; the tempting offer of Munn, doubtless, had the desired effect on Warner. The scruples of the latter, in accepting a direct agency for Munn to purchase the property from Prall, while he was acting as the agent of Prall in selling the same property, it seems, were not sufficiently strong to prevent his acceptance from Munn (although with seeming reluctance) of a check of $300 or $350, as a Presen^ ^ut which was evidently *in payment for services rendered, for which Warner professed to make no charge.
 

 But if there should exist any doubt, upon the evidence, in relation to the question of fact whether the agreement was delivered absolutely or conditionally, I tliink, the law puts that question at rest. Here, according to the evidence of Warner and Nixen, the delivery of the agreement was directly to the agent of Noah Worrall, and that is equivalent to a personal delivery to Worrall himself. The agreement was in a perfect condition; it was signed and sealed by Prall; it was delivered, on condition that it be subsequently approved by Prall. This was a delivery as an escrow; such a delivery can only be made to a stranger; it cannot be made to the party.
 
 [1]
 
 If made to the party, no matter what may be the form of the words, the delivery is absolute, and the deed takes effect presently, as the deed of the grantor, discharged of the conditions upon which the delivery was made; and where such a delivery is made, parol evidence of the conditions, being contrary to the terms of -the deed, is inadmissible.
 
 [2]
 
 Here, the intent of Warner was to deliver the agreement to the appellant as an escrow; it was not handed to Henry'
 
 *227
 
 Worrall, as an unexecuted and imperfect paper; there was no direction to him to retain it, and not to deliver it to the appellant, until it was ratified by Prall. It was not left in his hands for a temporary purpose, and to be returned, in case Prall did not assent to it, but it was delivered to Henry Worrall, as the agent of the appellant, as an executed and perfect instrument, on condition that Prall subsequently assented to it. Such a delivery was in law an absolute delivery.
 
 (Ward
 
 v.
 
 Lewis,
 
 4 Pick. 520;
 
 Fairbanks
 
 v.
 
 Metcalf,
 
 8 Mass. 238; 23 Wend. 45; 10 Id. 313.) Warner was duly authorized by Prall to deliver the agreement to the appellant.
 

 The only remaining questions to be considered are, whether the authority of Henry Worrall to execute the' counterpart should have been under seal; whether he executed the ^agreement -in the name of his principal; and if the counterpart was not binding on Noah Worrall, whether the original was binding on Prall.
 

 It is a maxim of the common law, that an authority . to execute a deed or instrument, under seal, must he conferred by an instrument of equal dignity and solemnity; that is, by one under seal. This rule is purely technical; a disposition has been manifested by most of the American courts, to relax its strictness, especially, in its application to partnership and commercial transactions. I think, the doctrine, as it now prevails, may be stated as follows, viz., if a conveyance or any act is required to be by deed, the authority of the attorney or agent to execute it must be conferred by deed; but if the instrument or act would be effectual, without a seal, the addition of a seal will not render an authority under seal necessary, and if executed under a parol authority, or subsequently ratified or adopted by parol, the instrument or act will be valid and binding ' on the principal. It is said, that the rule, as thus relaxed, is confined in its application to transactions.
 
 *228
 
 between, partners; but it seems to me, that a distinction between partners and other persons, in the application of the rule, as relaxed and qualified by recent decisions, stands upon no solid foundation of reason or principle.
 
 [3]
 

 The whole authority of a partner to act for his copart-ners and to bind them and their interest in the copart-nership property, is founded upon the common-law doctrine of agency; so0far as he acts for his partners, he is an agent. (Story on Part. § 1.) Thus, it is a general rule of the common law, that one partner cannot, from' the mere relation of partnership, bind his copartners by deed or instrument under seal, even in commercial dealings, unless specially authorized to do so, by an instrument under seal. (Story on Part. § 117; 3 Kent Com. 47, 6th edition.) This rule springs from the common-law maxim before mentioned, applicable to the general relation of principal and agent.
 

 There are numerous cases in the American courts, **n ^ie ru^e kas ^een relaxed as regards partnership transactions, in order to adapt it to
 

 the necessities of trade. (Story on Part. § 117; 3 Kent’s Com. 48.) Thus, the doctrine, as applicable to partners, is now firmly established, that wherever an act done by a partner, within the scope of the partnership business, would be valid, if done by an unsealed instrument, then, although done by an instrument under seal, it will be valid and bind his copartners, if it is authorized by a prior parol authority, or adopted by a subsequent parol ratification. (Story on Part. §§ 121, 122;
 
 Anderson
 
 v.
 
 Tompkins,
 
 1 Brock. 462, Marshall, C. J.; 3 Kent’s Com.
 
 48; Smith
 
 v.
 
 Kerr,
 
 3 N. Y. 150;
 
 Gram
 
 v.
 
 Seton,
 
 1 Hall
 
 *229
 
 262, Jones, C. J.;
 
 Skinner
 
 v.
 
 Dayton,
 
 19 Johns. 513, 553;
 
 Everit
 
 v.
 
 Strong, 5
 
 Hill 163;
 
 Tapley
 
 v.
 
 Butterfield,
 
 1 Metc. 515;
 
 Cady
 
 v.
 
 Shepherd,
 
 11 Pick. 400, 403.) And the rule that one partner cannot bind his copartners by deed, without an authority under seal, has been held, in several. cases, not to apply to a case where one partner con veys by deed, property of the firm; which he might have conveyed by an unsealed instrument, or by parol. The mere addition of the seal does not vitiate the conveyance.
 
 (Tapley
 
 v.
 
 Butterfield,
 
 1 Metc. 515;
 
 Anderson
 
 v.
 
 Tompkins,
 
 1 Brock. 462;
 
 Everit
 
 v.
 
 Strong, 5
 
 Hill 165;
 
 Milton
 
 v.
 
 Mosher,
 
 7 Metc. 244.) In
 
 Gram
 
 v.
 
 Seton (supra)
 
 Chief Justice JoNES, of the superior court of the city of New York, held that the authority of one partner to bind his copartners by deed, may even be implied from the acts and acquiescence of the copartners. No good reason can be assigned for a distinction between partners and other persons, in relation to the technical rule of the common law, that in all cases an authority to execute a deed must be by deed. The rights and liabilities of partners in their acts for each other are governed by the same rules as are the relations of principal and agent; each partner being considered an agent for his copart-ners; and the same questions of express and implied, general and special authority, must arise between partners, as between principal and agent. Upon principle, ^therefore, whenever an instrument, either as between partners, or principal and agent, would be effectual for the purpose intended, without a seal, the addition of a seal should not create the necessity of an authority under seal, to authorize an agent to execute it.
 

 In
 
 Lawrence
 
 v.
 
 Taylor
 
 (5 Hill 113), CoweN, J., speaking of a specialty executed by an attorney, without authority under seal, says,
 
 “
 
 yet, in such case, it does not follow, that it shall not operate at all; if the contract may be made without deed, the seal shall not prevent its inuring as a simple contract, though the authority be by parol,
 
 *230
 
 or merely implied from the relations between the principal and agent.”
 
 [4]
 
 In
 
 Skinner
 
 v.
 
 Dayton
 
 (19 Johns. 554, 558, in the court of errors), SpeNcer, C. J., held, that the contract executed in that case by Skinner, under seal, for the directors of the company, ought not to be considered a personal covenant of Skinner, in equity, and that the company were liable for a breach of the covenant, although the authority of Skinner was not conferred by deed; and such was the decision of the court of errors. Skinner was a director, and the president, of an association for manufacturing cotton, and entered into a contract for the making of some machinery for the company; the contract was ratified by the subsequent parol assent and acts of the stockholders. The court decided, that such subsequent ratification was an adoption of the act of the agent, and equivalent to a previous positive and direct authorization to do the act.
 

 In
 
 Randall
 
 v.
 
 Van Vechten
 
 (19 Johns. 60), a contract under seal had been entered into by the defendants, as a committee of the corporation of the city of Albany, with the plaintiffs, without authority under seal from the corporation. But the corporation had subsequently recog-nised by parol, the authority of the committee to make the contract, and it was held, that the contract was binding on the corporation, and that an action of
 
 assumpsit
 
 would lie against the corporation for its breach.
 

 *In the
 
 Bank of Columbia
 
 v.
 
 Patterson
 
 (7 Cran
 
 ch
 
 299, 307), a committee of the corporation, without any authority conferred by deed, had made a contract, in their own names, as such committee, under their private seals, and the supreme court of the United States held, that as the whole benefit of the contract resulted to the corporation, and as the corporation had, by its acts, subsequently adopted the contract, an action of
 
 assumpsit
 
 would lie on the contract, against the corporation.
 

 
 *231
 
 In
 
 White
 
 v.
 
 Cuyler
 
 (6 T. R. 176), where a wife, unauthorized by her husband, made an agreement under seal with a servant, providing for the services of the latter, and the servant performed the services, it was held, that although the covenant of the wife could not bind the husband, the servant could nevertheless maintain
 
 assumpsit
 
 against the husband. In
 
 Damon
 
 v.
 
 Granby
 
 (2 Pick. 352), it was decided, that although an agent who contracts for the use of a corporation, under his own seal, does not hind the corporation, by the deed,'yet, if he had authority to make the contract, it shall be binding on the corporation, as evidence of such contract.
 

 In
 
 Evans
 
 v.
 
 Wells
 
 (22 Wend. 340, 341), senator Ver-plank said, that these rules as to sealed instruments were not applicable to cases where a deed is not necessary, and that in such cases, an act of the agent, under seal, may be ratified by acts
 
 in pais.
 

 In
 
 Hanford
 
 v.
 
 McNair
 
 (9 Wend. 54), an agent had executed a contract under seal, for the purchase of timber, not being authorized by deed: Sutherland, J., said, that subsequent acts of the principal, recognising and carrying the agreement into effect, might be sufficient to make the contract binding on the principal, as a parol contract. In
 
 Blood
 
 v.
 
 Goodrich
 
 (12 Wend. 527) and in
 
 Hanford
 
 v.
 
 McNair
 
 (9 Id. 54), the supreme court, in laying down the common-law rule, that an authority to execute a deed must be conferred by deed, did not advert to the distinction between cases where the conveyance or contract must be made under *seal, and cases where they would be effectual without a deed. These authorities show that there is no distinction between partners and other persons, in the application of the modern rule, that wherever an instrument would be effectual, without a seal, it will be valid and binding on the principal, although executed under seal by an agent, without authority by deed, if authorized by
 
 *232
 
 a previous parol authority, or subsequently ratified or adopted by parol.
 

 In this case, a seal was not necessary to the validity of the contract for the sale of the lands at Haverstraw. All that the statute of frauds requires is, that a contract for the sale of lands shall be in writing, and that such writing express the consideration, and be subscribed by the party by whom the sale is to be made, or by his agent lawfully authorized. The authority of the agent may be conferred. by parol; neither a written authority nor an authority under seal is required. (2 Nev. Stat. 135, §§ 8 and 9; 10 Paige 386; 5 Hill 107.) It results from the foregoing authorities, that the counterpart of the agreement executed by Henry Worrall, under seal, was binding on his principal, although his authority to execute it was not conferred by deed.
 

 A question might have arisen upon the case, as to the nature and character of the remedy against Noah Wor-rall, in case he had violated the contract, whether that remedy should have been in covenant, founded on the covenants in the contract, regarding it as a deed, or an action of
 
 assumpsit
 
 on the contract, regarding it as a simple contract. Justice CoweN was of opinion, that a contract, executed by an agent under seal, where his authority was by parol, inured as a simple contract. If so, the remedy against the principal would be an action of
 
 assumpsit;
 
 and to the same effect are the cases of
 
 Randall
 
 v.
 
 Van Vechten
 
 (19 Johns. 60);
 
 Bank of Columbia
 
 v.
 
 Patterson
 
 (7 Cranch 299), and of
 
 White
 
 v.
 
 Cuyler
 
 (6 T. R. 176).
 

 In
 
 Hanford
 
 v.
 
 McNair
 
 (9 Wend. 54), Sutherland, J., intimated, that as the defendant had, by his acts, recog-nised the *contract, and had partly carried it into effect, it might be enforced against him as a parol contract. In
 
 Gram
 
 v.
 
 Seton
 
 (1 Hall 283), Ch. J. JONES expresses the opinion, that the parol authority of the agent to execute the contract, or a subsequent ratifi
 
 *233
 
 cation or adoption of tbe act of the agent, makes the agent’s seal, the seal of the principal, and that the latter thereby becomes liable to an action of covenant on the contract, as on his own deed.
 

 The manner of the execution of the counterpart was not objectionable. It was executed by Henry Worrall, for and in the name of his principal, Noah Worrall. It is immaterial, whether the agent signs his name to the instrument, before or after the name of the principal; it is sufficient, if the agent executes the paper in the name of the principal, and not in his own name.
 
 (Wilks
 
 v.
 
 Back,
 
 2 East 142; 23 Wend. 441, per Bronson, J.; Dunlap’s Paley on Agency 182.)
 

 If the counterpart of the agreement, executed by Henry Worrall for the appellant, was binding on the latter, then the objection that the' agreement was not binding upon Prall, for want of mutuality, falls to the ground. But I am inclined to believe, that even if the counterpart was void, because executed under seal, or in consequence of the manner of its execution, yet that the agreement, although not signed or executed by Noah Worrall, was binding on him.
 
 [5]
 
 Noah Worrall accepted the agreement; he tendered a performance on his part to Prall, and claimed a performance by him. The statute of frauds does not require that a contract for the sale of lands should be executed by the
 
 vendee,
 
 the contract is valid, if subscribed only by the
 
 vendor.
 
 (16 Wend. 460.) The statute of frauds of 1787 was substantially in the same words as the title of the revised statutes in relation to fraudulent conveyances; the former required the contract to be signed by the party to be charged therewith, or some other person by him lawfully authorized. (1 R. L. of 1813, p. 78.)
 

 
 *234
 
 In
 
 Ballard
 
 v.
 
 Walker
 
 (3 Johns. Cas. 60), the supreme court held, that a contract for the sale of lands, signed °n^ ^ *venJ°r> was bidding on both the vendor and vendee. Radcliff, in that case, says, that the statute of frauds only requires the contract to he signed by the party to be charged therewith: that the contract was, therefore, valid, within the statute; that although not signed by the vendee, it'was a case of mutual promises, and the one promise was the consideration of the other; and that it was valid, as a contract by parol. A like decision was made in
 
 Roget
 
 v.
 
 Merritt
 
 (2 Caines 120).
 

 In
 
 Gale
 
 v.
 
 Nixon
 
 (6 Cow. 445), Sutherland, J., intimates, that if a contract for the sale of land, signed and sealed by the vendor only, is accepted by the vendee, it may be enforced against him by the vendor, in an action of
 
 assumpsit.
 
 This principle was applied to contracts not within the statute of frauds, in
 
 Randall
 
 v.
 
 Van Vechten; Bank of Columbia
 
 v.
 
 Patterson;
 
 and in
 
 White
 
 v.
 
 Cuyler (supra).
 
 In all these cases, although the execution of the contract by the agent, under seal, was held not to bind the principal, yet, as the contract had been signed by the other contracting party, and he had rendered services under it, and the principal had by acts adopted it, it was held, that it inured as a simple contract, and that an action of
 
 assump-sit
 
 lay against the principal, in behalf of the other contracting party.
 

 It is said in Littleton, that if a lease, by indenture, to two lessees, be executed, and one of them only sign the counterpart, but the other enters and agrees to the lease, the latter can be charged in covenant, for a sum in gross which he was bound to pay to the lessor, in case certain conditions were not performed,
 
 because he accepted the lease.
 
 (Co. Litt. 231
 
 a;
 
 Com. Dig., Covenant, A. 1.)
 

 There are, however, several cases, in which it has been held that no action will lie on a contract for the sale of,
 
 *235
 
 lands or goods, against any party wbo has not signed or subscribed the contract, although the contract is valid within the statute of frauds. (14 Johns. 486, in error, per Kent;
 
 Hawkins
 
 v.
 
 Holmes,
 
 1P. Wms. 770;
 
 Allen
 
 v.
 
 Bennett,
 
 3 Taunt. 175;
 
 Palmer
 
 v.
 
 Scott,
 
 1 Russ.
 
 &
 
 Mylne 391;
 
 Flight
 
 v.
 
 Bolland,
 
 4 *Russ. 298.) But a contract, valid within the statute, even if not binding on the party who has not subscribed it, can nevertheless be enforced, either at law or in equity, against the party (if the contract is for the sale of land) by whom the sale is to be made, or (if for the sale of goods) who is to be charged thereby, if subscribed by him; want of mutuality is no defence to the suit.
 
 [6]
 
 The vendor, or party to be charged, who has subscribed the contract, is estopped, by his signature, from denying that the contract was validly executed, although not signed by the other party who sues for the performance.
 
 (Clason
 
 v.
 
 Bailey,
 
 14 Johns. 486, in error;
 
 Allen
 
 v.
 
 Bennett,
 
 3 Taunt. 169-175;
 
 McCrea
 
 v.
 
 Purmort,
 
 16 Wend. 465;
 
 Seton
 
 v.
 
 Slade,
 
 7 Ves. 265 and note
 
 c.,
 
 Sumner’s ed.;
 
 Davis
 
 v.
 
 Shields,
 
 26 Wend. 362;
 
 Ballard
 
 v.
 
 Walker,
 
 3 Johns. Cas. 60;
 
 Roget
 
 v.
 
 Merritt,
 
 2 Caines 120;
 
 Russell
 
 v.
 
 Nicholl,
 
 3 Wend. 112;
 
 Penniman
 
 v.
 
 Hartshorne,
 
 13 Mass. 88; 2 Kent’s Com. 510, 511; 1 Edw. Ch. 5.)
 

 It is the constant practice of the court of chancery, to compel a specific performance by a vendor, of a contract for the sale of lands, subscribed by him, although the vendee has not bound himself, by subscribing the contract. Bills for specific performance are supported, in such cases — 1st, because the statute of frauds only requires the contract to be signed by the vendor; and .2d, because the plaintiff, by the act of filing the bill, makes the remedy mutual.
 
 (Flight
 
 v.
 
 Bolland,
 
 4 Russ. 298;
 
 Palmer
 
 
 *236
 
 v.
 
 Scott,
 
 1 Russ. & Mylne 391;
 
 Allen
 
 v.
 
 Bennett,
 
 3 Taunt. 175, per Mansfield, C. J.;
 
 Seton
 
 v.
 
 Slade,
 
 7 Ves. 265;
 
 McCrea
 
 v.
 
 Purmort,
 
 16 Wend. 465;
 
 Hunter’s Case,
 
 1 Edw. Ch. 5;
 
 Clason
 
 v.
 
 Bailey,
 
 14 Johns, 488, 490, in error, per Kent;
 
 Martin
 
 v.
 
 Mitchell,
 
 2 Jac. & Walk. 426.
 

 The cases of
 
 Bogart
 
 v.
 
 De Bussey
 
 (6 Johns. 94), of
 
 Spencer-y. Field
 
 (10 Wend. 87), of
 
 Townsend
 
 v.
 
 Corning
 
 (23 Id. 435), and of
 
 Townsend v.'Hubbard
 
 (4 Hill 351, in error), do not establish any principle in conflict with any of the foregoing propositions. In every one of these cases, the c01ltract *was vo^> within the statute of frauds, because it was not properly executed by the
 

 vendors, or their agents. (10 Paige 393.)
 

 Having come to the' conclusion, that the agreement between Prall and Noah Worrall was a valid agreement, within the statute of frauds, and that the same was duly executed and delivered to Worrall by Prall, and was binding on Prall, my opinion is, that Worrall is entitled to a decree for a specific performance of the agreement. The majority of the court concur with me in the above conclusion, in the opinion that the plaintiff is entitled to a decree for specific performance. The decree of the supreme court must, therefore, be reversed, and the decree of the vice-chancellor affirmed.'
 

 Decree of the supreme court reversed, and that of the vice-chancellor affirmed.
 
 [7]
 

 [1]
 

 Ordinary
 
 v.
 
 Thatcher, 21 Alb. L. J. 317. Such a delivery is either absolute or inefficacious. Braman
 
 v.
 
 Bingham, 26 N. Y. 483; Simonton’s Estate, 4 Watts 180; Flagg
 
 v.
 
 Mann, 2 Sum. 489.
 

 [2]
 

 Lawton
 
 v.
 
 Sager, 11 Barb. 349; Black
 
 v.
 
 Lamb, 1 Beasley 108.
 

 [3]
 

 An agent, acting under a parol authority, may bind his principal by a contract for the sale of lands, executed in the name of the latter. Moody
 
 v
 
 Smith, 70 N. Y. 598. But a contract, under seal, for the sale of lands, executed- by an agent, in his own name, without referring to his principal, cannot bo enforced against the latter. Briggs
 
 v.
 
 Partridge, 64 N. Y. 357; s. c. 7 J. & Sp. 339. Nor can the principal sue thereon, on proof of a parol authority to the agent. Schaefer
 
 v.
 
 Henkel, 75 N. Y. 378.
 

 [4]
 

 Se
 
 Schaefer
 
 v.
 
 Henkel, 75 N. Y. 378.
 

 [5]
 

 This
 
 dictum,
 
 of the learned judge was disapproved, in Gage
 
 v.
 
 Jaqueth, 1 Lans. 207, where the court say that the cases cited do not sustain the proposition. And see Justice
 
 v.
 
 Lang, 7 J. & Sp. 283; Parrish
 
 v.
 
 Koons, 1 Pars. 79.
 

 [6]
 

 The statute of frauds only requires the contract to be signed by the party to be charged therewith. Justice v. Lang, 42 N. Y. 493 ; Bleecker v. Franklin, 2 E. D. Sm. 93; Earl
 
 v.
 
 Campbell, 14 How. Pr. 330; Tripp v. Bishop, 56 Penn. St. 424; Smith’s Appeal, 69 Ibid. 474.
 

 [7]
 

 The deed executed by the defendant, Munn, on taking his appeal from the vice-chancellor, which had been deposited with the cleric in chancery, having been lost, the supreme court ordered him to execute a new deed, and this decree was affirmed, on a second appeal. (17 N. Y. 475.) The plaintiff’s damages having been subsequently ascertained by a reference, and judgment entered in his favor, Munn took another appeal, and obtained a reversal, on the ground, that an erroneous rule of damages had been adopted. (38 N. Y. 137.) And the damages having been subsequently assessed, in accordance with the last opinion of the court of appeals, at the sum of $14,435.58, and judgment entered therefor, this persevering litigant, whose fraud in purchasing, with notice of the plaintiff’s right, had brought the latter into court, again appealed, but this court .‘sndered a final judgment against him for the dam
 
 *237
 
 ages. (53 N. Y. 185.) The plaintiff bad been let into possession on the 20th September 1859 ; and in 1873, Munn had a judgment against him for this large amount of damages, solely resulting from his own obstinacy, in refusing to do justice to an honest purchaser, on a mere technical objection, of which he got the idea, he could take advantage. This was the result of a thirty years’ litigation.