Truax, J.
In January, 1880, the respondent was the owner of property known as No. 25 Waverly Place, in the city of New York, and other real estate in this state. She was then living in London. On the second day of January, 1880, she made a power of attorney to her brother Arthur Lake, which power of attorney recited that the respondent was entitled to certain real and personal estate and effects in the United States, and that the said Arthur W. Lake was about to proceed to the United States of America for the purpose of taking charge of all the respondent’s affairs in the United States, and of managing, conducting or carrying on the same; and that she was desirous of appointing the said Lake her attorney, with such powers as are or may be necessary for or convenient for enabling him to manage and conduct her affairs and property, real and personal, in the United States, as effectually as if she were personally present there.
She then proceeded to appoint the said Lake her true and lawful attorney for her and in her name, or in his own name and on her behalf generally to manage and conduct her property and affairs in the United States of America, as fully and effectually as if she were personally present, and to sell or dispose of all or any part of her real and personal estate in the United Stat.es, and to ' convey or assign the same to the purchaser or purchasers thereof.
Acting as he supposed, under this power of attorney, Lake entered into negotiations with Clark for a lease of the premises No. 25 Waverly Place. There was some doubt whether or not Lake was authorized to make any lease by his letters of* attorney, but finally in January, 1880, said Lake did execute and deliver to said Clark a lease of • the premises above mentioned, for the term of five years at a rental of $2,000 a year, with an *105 agreement to renew said lease, upon certain conditions, for two other terms of five years each.
After the execution and delivery of this lease Mr. Lake received a cable message from Mr. Hyatt, the husband of the respondent, which read as follows: “ Tour power of attorney cancelled. Sign no lease.”
Mr. Clark entered into possession of the premises February 12, 1880. He agreed in his lease to expend not less than $2,000 in putting the place in thorough repair and in making certain necessary alterations. It was in evidence that he did pay upwards of $4,000 in making these alterations. Mrs. Hyatt came to this country in September, 1880, and saw Mr. Clark, and accepted the rent of the premises from him up to February, 1885.
Mr. Clark brings his action to compel Mrs. Hyatt to specifically perform the terms and conditions of the clause and covenant in the said original lease, providing for a renewal thereof, while Mrs. Hyatt brings her action to obtain a judgment adjudging and decreeing that said lease is nidi and void, and that it be delivered up to her to be cancelled. She claims in both of the actions in substance, that the power of attorney did not authorize the attorney therein named, to make a lease, and that for certain reasons which will hereafter be mentioned, she has not ratified the lease already made.
I am of the opinion that the power of attorney did authorize the attorney therein named to make the lease.
In view of the facts of the case and the recitals in the power of attorney, it seems to me that the words “ sell or dispose of all or any part of her real estate,” and the words “ to convey or assign the same,” authorized the attorney to make a lease of the property. A lease is a conveyance. 2 Black. Com. 506. The person conveying is called the lessor. Wharton’s Law Dict. “Lease.” Certainly a lease is a disposition of the property. Mrs. Hyatt by that lease as effectually disposed *106 of the property for the time mentioned in the lease as-, she could have disposed of it by a deed.
In Hedges v. Riker, 5 Johns. Ch. 163, there was a devise to executors in trust, with power to the executors, to sell and dispose of certain real estate. The executors made a lease for years and the court held that this, was a valid disposition of the estate within the will.
It was claimed on the trial and was found that Mr.. Clark did not accept the delivery of the lease absolutely, at the time that it was made, but postponed his decision as to accepting or not accepting it, until Lake should have telegraphed to England to Mrs. Hyatt to ascertain whether or not she would consent to the lease. The trial court also found that this fact was not disclosed to Mrs. Hyatt until about the month of October,. 1884, and that she accepted the rent which had been paid to her, in ignorance of any right on her part to-question the transaction or disaffirm or cancel the lease. The witness Lake testified on the trial to facts which would perhaps warrant these findings; but, on the-other hand, Clark controverted in his evidence, this testimony given by Lake. There is no dispute, however, of this fact: that the lease was drawn up, executed and delivered to Clark, and under the circumstances Clark could not hold the lease in escrow for himself. Delivery of a deed or agreement as an escrow, can only be-made to a stranger. If made to the party, the delivery is absolute, and the instrument takes effect presently, as-the deed or agreement of the party making it. Worrall v. Munn, 5 N. Y. 229.
On the trial, Mr. Yeaman was called as a witness by Mrs. Hyatt. It was sought to prove by him that the lease was delivered to Mr. Clark, but was to be held by him to await the receipt of a message from the respondent. Mr. Yeaman’s recollection of the transaction was-, very vague, but he identified a letter written by him at the time to Mr. Lake. He was allowed to state, under-the objection and exception of the respondent, that the: *107 statements contained in the letter were true; and then,, under like objection and exception, the letter was offered in evidence. This, we think, was error. It undoubtedly was offered for the purpose of corroborating Mr. Lake’s testimony. Undoubtedly it might be used by the witness to. refresh his recollection, but the-paper itself was not evidence of. any fact, and the admission of it, under the circumstances, makes this casein many respects like the case of Hubbell v. Bowe,. 49 Super. Ct. 131, in which this court held, “ that a line of examination cannot be allowed which in effect puts, in evidence the affidavit of a witness made a long time previous to the trial, instead of his direct oral statement of his present recollection of the facts therein deposed" to.”
I am also of the opinion that, even if Lake had not. the power to make the lease, it was ratified by Mrs.. Hyatt, with full knowledge of all the facts that it was-necessary for her to have, in order to make a ratification of the lease. The act that she ratified was the act of her agent in making the lease, and this she did with full knowledge of the only fact that it was necessary that she should know, namely, the fact that the agent, had made the lease. She knew the terms of the lease. She visited the premises, saw the improvements and' alterations which the tenant was then making, accepted rent from him at that time and afterwards, and now it-would be unjust to allow her to set the lease aside on the ground that an immaterial fact which happened at the time of the making of the lease had not been disclosed to her.
Both of the judgments appealed from are reversed,.with the costs and disbursements of appeal in one judgment only.
O’Gorman, J.
The pressure of business on me at special term obliges me to confine myself to a brief statement of the conclusions at which I have arrived.
*108 The power of attorney from Mrs. Hyatt to Lake did not give him authority to execute a lease of Mrs. Hyatt’s house. Craighead v. Peterson, 72 N. Y. 283. Both she and Lake, and Clark, were, each of them, chargeable with knowledge of the legal effect of that power of ■attorney. Ib.
The negotiation between Lake and Clark about the power of Lake to execute this lease, the doubt expressed by Clark, his refusal to accept delivery of the lease, and his postponement of his decision as to accepting or not ■accepting until he heard further from Mrs. Hyatt, his being informed of the cablegram from Mrs. Hyatt, “Your- power of attorney canceled—sign no lease; ” and his acceptance of the lease thereupon, saying he “ would take the risk,” are all immaterial.
The lease then received by Clark was ultra vires, and •of no legal effect, unless Mrs. Hyatt waived the incompetency of her agent to make the lease and ratified the lease, notwithstanding that it was ultra vires.
Mrs. Hyatt, by accepting rent, did waive the objection to the léase as ultra vires, and ratified it, and it thereby became valid and binding. When she. so ratified it, she knew that it was ultra vires. The law charged her with knowledge of the purpose, scope, and legal effect of her ■ own deed, and it made no difference what occurred between her agent Lake, and Clark on the subject of the delivery.
There is authority too, to support the proposition that. she was chargeable with all the knowledge her agent Lake possessed of what occurred between them. Myers v. Mut. L. Ins. Co., 99 N. Y. 11; Adams v. Mills, 60 Ib., 539. But her rights were in no way affected by what they said or did on that subject. Nothing that they could have said or done would have added to or detracted from her right to repudiate the lease, or to ratify it if she elected so to do; and her ignorance of what was said or done between Clark and Lake, was of *109 no consequence, because her rights, in no way, depended on what was said or done between them.
H Lake had power to execute and deliver the lease, he had delivered it, as far as he was concerned, before the receipt of the cablegram from Mrs. Hyatt. That cablegram did not, expressly or by implication, assert that Lake had had no authority to make the lease, when it was so delivered, but only that the power of attorney was cancelled.
If the lease were ultra vires, nothing that had occurred between Lake and Clark about its delivery, could have given it force. If the lease were made by authority from Mrs. Hyatt, then the delivery of the lease by Lake to Clark before the receipt of the cablegram, was a valid delivery to Clark. It could not be regarded as a delivery in escrow, for that can arise only when the instrument is delivered to some one, other than a party to the instrument. Worrall v. Munn, 5 N. Y. 229; Cocks v. Barker, 49 Ib. 107.
The ratification by Mrs. Hyatt, therefore, I regard as a ratification of the execution and delivery of the lease by Lake, and a waiver of her right to object to the action of Lake therein.
In my opinion, the lease, with all its incidents, should stand as valid and binding in all respects on Mrs. Hyatt, and Clark is entitled to a renewal according to the terms of the lease.