McLANE VAN INGEN and PHILIP VAN INGEN, Plaintiffs, *v.* AUGUST BELMONT and Others, Defendants.

Supreme Court, New York Special Term, June, 1923.

**Vendor and purchaser — specific performance — when suit will lie to enforce judgment against undisclosed principals upon contract of sale executed by agent under seal — when judgment against agent res judicata.**

In a vendee's action to rescind a land contract and to recover the down payment on the ground of defective title the defendant vendors counterclaimed for specific performance and a judgment in their favor was reversed by the Appellate Division.  Upon the second trial the judgment was in favor of the defendants and was sustained by the Appellate Division and also by the Court of Appeals.  An execution upon said judgment having been returned unsatisfied against the plaintiff in that action, the assignees of the defendants therein brought the present suit to enforce the same judgment upon the ground that the defendants herein were the undisclosed principals of the plaintiff in the other action. *Held*, that the findings of the trial justice in the first action were to be regarded

as *res judicata* and determinative of the facts that the plaintiff in that action was a mere dummy and that the defendants herein were her then undisclosed principals and are the real parties in interest in the present action. The plaintiffs, therefore, as the successors in interest of the vendors are entitled to judgment against the defendants directing them to specifically perform the vendee's obligation under the contract, although it was under seal.

SUIT for specific performance of contract.

*Stroock & Stroock* (*Moses J. Stroock* and *Edward F. Spitz*, of counsel), for plaintiffs.

*Harold Swain, Charles Stewart Davison* and *George W. Phillips, Jr.,* for defendants.

McCOOK, J. Plaintiffs are successors in interest of the Pettus-Curtis family, with whom Sadie M. Begen on January 27, 1902, entered into the contract whose effect is the subject of this controversy. Under the contract Miss Begen agreed to purchase and the Pettus-Curtis group to sell for $60,000 certain real estate, and at the time of signing the purchaser paid $6,000 as down money. The litigation began with an action entitled *Begen* v. *Pettus*, in which the vendee sought to rescind and to recover the down payment from the vendors on the ground of defective title, and the vendors counterclaimed for specific performance.

The first trial resulted in favor of defendants Pettus and others, but the judgment was reversed by the Appellate Division. A second trial also resulted favorably to defendants, whose second judgment was sustained by the Appellate Division, and also (except for a modification which need not be discussed here) by the Court of Appeals. The execution upon this judgment was returned unsatisfied against Miss Begen. The within plaintiffs, assignees of the then defendants Pettus-Curtis, seek to enforce the same judgment against the within defendants, members of the firm of Belmont & Co., on the ground that they were the undisclosed principals of Miss Begen.

Defendants contend that they are not liable because the agreement in question was under seal. This raises an issue whose disposition must be decisive. Plaintiffs, in addition to challenging defendants' chief proposition of law, further rely upon the representation of Miss Begen's attorney, on the occasion of the first trial, to the effect that " the plaintiff (Miss Begen) was an employee of the Title Guarantee and Trust Company, who executed the contract as matter of convenience for a customer of the Title Guarantee and Trust Company (Belmont & Co.), who did not wish to be known in the purchase. I think there is no question in regard to that, because there will be no question in regard to

the ultimate ability of the plaintiff to carry out any decree that may be made here."

It is unnecessary to pass upon the particular contention of plaintiff beyond saying that the representation serves at least to negative defendants' present claim that Belmont & Co., in causing the contract to be executed, did not contemplate being bound to an extent greater than the $6,000 payment, and to make less reliable the new testimony of defendants' witness as to what was said at the time in that respect.  I, therefore, return to the principal issue.

No rule of law was better settled until within a few years than the principle that a contract under seal will not be enforced against any person not named therein as a party.  It was repeated as late as 1911 in *Case* v. *Case*, 203 N. Y. 263, 265.  Plaintiffs attempt to show that this contract, though carrying red wafers, and using the words " Witness the hands and seals of the above parties," was not an instrument under seal.  This view is not tenable.  In form the agreement was under seal and no stronger words or better seals could have been employed to make it so. We must, then, inquire to what extent the ancient rule has been abrogated or modified in New York, if at all, since 1911.

Without entering upon a historical disquisition, the explanation of the sanctity of the seal appears to be found in its original use, which was to represent and identify a party.  It preceded and took the place of the signature.  When literacy became more general, the seal survived as an added mark of solemnity, importing consideration.  Passing to recent times, when, as in the case of a will, a statute in providing the form and method of execution makes no mention of a seal the seal was held unnecessary, even though the instrument was and was recited to be " sealed."  *Worrall* v. *Munn,* 5 N. Y. 229; *Wood* v. *Auburn & Rochester R. R. Co.,* 8 id. 160.

The rule that an undisclosed principal may not sue or be sued upon a sealed instrument executed by his agent has long been an exception to the general rule that where a seal (as in our case) is not required its presence does not confine enforcement to the nominal parties.  *Briggs* v. *Partridge,* 64 N. Y. 357; 3 Cornell Law Quarterly (1922), 143–145; 35 Harvard Law Review, 117.

The tendency further to narrow the effect of this exception became crystallized in *Harris* v. *Shorall,* 230 N. Y. 343 (1921), where Pound, J., used this language: " The time to dispose of the rule effectively, if not now, is near at hand.  \* \* \*  In New York the solemnity of a seal has been much diminished.  \* \* \* The mere writing of the letters ' L. S.' opposite a signature is a

sufficient private seal, * * * and the sealing of a contract is as often a mere circumstance as a deliberate, solemn act and deed. When so much of the old value and high nature of the seal has been lost, the court should not be tenacious to preserve one of its minor incidents for the sake of the rule, but should rather strive to give effect to the real agreement of the parties."

Judge Pound, in the same opinion, quotes with approval the author of Williston on Contracts, in saying (§ 1836): " The matter cannot be considered settled in any jurisdiction unless the court of that jurisdiction has either abrogated the rule, in which case it is not likely to recede, or has expressly considered it in a recent case."

The Appellate Division of this department (1922) held in *Ressler* v. *Samphimor Holding Corp.*, 201 App. Div. 344, in an action to rescind a contract, that though the instrument was executed by the defendant under seal, since a seal was not required by law all the parties acting through a dummy corporation were liable. Citing *Briggs* v. *Partridge, supra.*

Before the *Ressler* case had been decided Mr. Justice Cropsey, in the second department, passed on a demurrer involving the question whether an undisclosed principal may enforce a contract to make a lease where the contract is under seal. He held in *Lagumis* v. *Gerard*, 116 Misc. Rep. 471, in the affirmative, relying upon *Harris* v. *Shorall, supra.* I agree with his reasoning and find it to apply with equal force to a case like the within, where the undisclosed principal, instead of suing, is himself sued.

The defendants have in their briefs prepared a long analysis of the past of this litigation, criticising the conduct of both preceding trials by the presiding justices and the reasoning of the courts of review. This is fruitless. I shall not go back of the findings of Mr. Justice Newburger as modified by the Court of Appeals. I regard those findings as *res judicata* and determinative of the facts to which they apply — for example, that Sadie M. Begen was a mere dummy and that defendants were her (then undisclosed) principals and are the real parties at interest in this action.

I must reject defendants' contention that since the law was otherwise in relation to instruments under seal at the time this contract was made they are only liable to the extent of the down payment. So to hold would be to declare any development in the law of contracts impossible.

Giving effect to what I find to have been the real agreement of the parties, and relying on *Harris* v. *Shorall* and *Ressler* v. *Samphimor Holding Corp., supra*, I hold that the members of the firm of Belmont & Co. were liable to the Pettus-Curtis group and are

liable to their successors in interest under the contract of January 27, 1902, and consequently that plaintiffs are entitled to judgment against defendants, directing that the latter specifically perform the vendee's obligation under the contract.

Judgment accordingly.