[No. 9,454. In Bank.—February 27, 1885.]

## M. A. CROSS, APPELLANT, v. THE SACRAMENTO SAVINGS BANK ET AL., RESPONDENTS.

ACCOUNT STATED—EVIDENCE TO IMPEACH—FRAUD AND MISTAKE.—Evidence to impeach an account stated is inadmissible in the absence of an averment of fraud or mistake.

ID.—ACQUIESCENCE—ASSIGNMENT.—On a review of the facts, *held*, that the right to impeach the account for fraud or mistake had been lost by acquiescence, and that such right, under the circumstances of the case, could not be assigned.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

The facts are sufficiently stated in the opinion of the court.

*A. L. Hart*, and *J. H. McKune*, for Appellant.

The cause of action existing in Samuel Cross to open up the affairs of the Sacramento Bank, and have a fair proportion of

the assets distributed to him in liquidation, was assignable. (Civil Code, §§ 1457, 1458, 953, 954 ; 2 Story's Equity, 1050 ; *Field* v. *Mayor*, 6 N. Y. 179 ; *Bergson* v. *B. I. Co.*, 38 Cal. 544 ; Burrell on Assignments, 100.)    The alleged settlement of accounts between plaintiff and defendants cannot operate to prevent an examination into the real condition of plaintiff's account.    In cases of dealings between a trustee and his *cestui que trust*, all contracts are presumed to be fraudulent, and the *bona fides* of every transaction, relied upon by the trustee to defeat the rights of the beneficiary, must be affirmatively proved by the trustee.    (Story's Equity, §§ 321, 322 ; Kerr on Fraud and Mistake, 154, 173.)

*Freeman & Bates*, for Respondents.

The plaintiff, as assignee of Samuel Cross, had no right to surcharge the accounts stated between him and the Savings bank.    (*Borst* v. *Baldwin*, 30 Barb. 182 ; *Crocker* v. *Bellangee*, 6 Wis. 665 ; *Carroll* v. *Potter*, Walker's Ch. 355 ; *Upton* v. *Basset*, Cro. Eliz. 445.)    A mere right to file a bill in equity to set aside a deed, to complain of a fraud, &c., is not assignable.    (2 Lead. Cas. in Eq., 4th Am. ed. p. 1636 ; Story's Eq. Jur., § 1040, h ; Pomeroy's Remedies, § 153 ; Bispham's Eq. 166 ; Pomeroy's Eq., § 1275 ; *Brush* v. *Sweet*, 38 Mich. 577 ; *Bullard* v. *Raynor*, 30 N. Y. 197 ; *Crocker* v. *Bellangee*, 6 Wis. 665 ; *De Houghton* v. *Money*, L. R., 2 Ch. App. 164 ; *Boughton* v. *Smith*, 26 Barb. 635 ; *Smith* v. *Harris*, 43 Mo. 561 ; *Vose* v. *Grant*, 15 Mass. 516 ; *The Mil. & Minn. R. R. Co.* v. *M. & W. R. R. Co.*, 20 Wis. 183 ; *Hill* v. *Boyle*, L. R., 4 Eq. Ca. 263.) The settlement between the Savings Bank and plaintiff's assignor, consisting of the accounts stated and the payments thereof, are conclusive.    (*Terry* v. *Sickles*, 13 Cal. 429 ; *Lockwood* v. *Thorne*, 11 N. Y. 173 ; 2 Greenl. Ev. 126 ; Story's Eq., § 523 ; *Union Bank* v. *Knapp*, 15 Am. Dec. 182 ; *Langdon* v. *Roanes*, 41 Am. Dec. 60 ; *Bullard* v. *Raynor*, 30 N. Y. 197 ; *Boughton* v. *Smith*, 26 Barb. 640.)

McKEE, J.—This is an action by plaintiff, as assignee of Samuel Cross, to compel the Sacramento Savings Bank to account with her for certain deposits made by her assignor with the

bank, and the interest and profits accruing thereon, and to set aside certain alleged fraudulent transfers of the property by the Savings Bank to its co-defendant, the Sacramento Bank.

The answer of the defendants contains a general denial of the allegations of the complaint, and sets up a final settlement of accounts between the Savings Bank and the plaintiff's assignor, payment in full, and final discharge.

Upon the trial of the issues raised by the pleadings, the facts were found to be: That Samuel Cross had two accounts with the Sacramento Savings Bank—one which he opened in his individual name in the month of August, 1869, and the other in the name of " Samuel Cross, trustee," in the month of October, 1870, both of which were kept open until the 1st of May, 1880. For each of these accounts he was furnished with a pass-book, upon which the bank entered the moneys deposited by him from time to time on each account, the dividends which were declared thereon, and the payments which were made upon drafts drawn by him. These accounts were from time to time stated and balanced on the books of the bank, and entered upon the pass-books. Between the years 1869 and 1880, the account on the first pass-book was stated and balanced four times, viz: in 1870, 1876, 1878, and on the 1st of May, 1880; and on the second pass-book five times, viz: in 1874, 1876, 1877, 1879, 1880.

On the 19th of April, 1880, the Savings Bank went into liquidation, notified its depositors that it had declared dividends of its earnings and reserve fund, payable on and after the 1st of May, 1880, and at the same time notified them to close their accounts and withdraw their deposits, so that the business of the bank might be closed. Upon receiving this notification, Cross, in writing, authorized the bank to close his accounts, and transfer whatever balances might be found due him thereon to the Sacramento Bank—a commercial bank organized under the laws of the State, and doing a banking business in the city of Sacramento—both banks being under the management of the same directors. At his request the Savings Bank stated the accounts between itself and Cross on its books and his pass-books. The statements represented a balance struck in favor of Cross, on the first account of $307 and on the second account of $311. These balances were settled on the bank-books and the pass-

books, and at the request of Cross were deposited to his credit in the Sacramento Bank, with which he thereafter continued to deal on a new account, which he opened with that bank.

The finding of the court as to these transactions is, " That with respect to the moneys deposited by said Samuel, whether in his own name or in the name of 'Samuel Cross, Trustee,' no agreement was made other than such as was implied by law from the making of such deposits in a Savings and Loan Society. That said society did account with said Samuel for all moneys received by it from him, both in his own name and as trustee, and for all dividends and proceeds thereof; and he was not, either in his own right or as trustee, at any time after May 1, 1880, entitled to have or receive any moneys from said society; for that all his accounts therewith were on said last named day stated, settled and fully paid." Upon this finding, judgment was given for the defendants.

This judgment, plaintiff contends, is erroneous; because on the trial error was committed (1) in excluding evidence offered by the plaintiff to show what would have been the true balance due by the Savings Bank on the accounts of Samuel Cross; (2) in refusing to permit the plaintiff to amend her complaint by asserting in it allegations of fraud or mistake committed by the bank in the years 1871 and 1876, in failing to credit the accounts of Samuel Cross with large amounts of money deposited by him in those years, and (3) in excluding evidence offered by the plaintiff tending to prove that certain transfers of property by the Savings Bank to the Sacramento Bank, prior to the settlement of said accounts, were fraudulent and void.

As to the first assignment of error, the offered evidence was properly excluded, because it was irrelevant to the issues on trial. The complaint did not require that the statements of the accounts between the Savings Bank and Samuel Cross, prior to the 1st of May, 1880, should be reopened and examined. Admittedly, therefore, the accounts as stated by the parties were correct. But to obviate the objection made and sustained to the offer under the pleadings, the plaintiff proposed to amend her complaint, by inserting in it allegations of fraud or mistake in the particulars referred to in the second assignment of errors. The court denied her application to amend, and also

LXVI. CAL.—30,

excluded the evidence referred to in the third assignment of errors, upon the ground that the plaintiff, as assignee of the pass-books of Samuel Cross, acquired by the assignment no right to maintain an action to surcharge, and falsify the settled accounts of Samuel Cross, or as incidental thereto, to set aside transfers of property by the Savings Bank to the Sacramento Bank, resulting from the final settlement of the former with its depositors.

The assignment was as follows:

" For value received, I hereby sell, assign, transfer, and set over to my wife, M. A. Cross, certain pass-books, numbered 2710, issued to me by the Sacramento Savings Bank, now marked with my initials S. C., together with all moneys, dividends, rights of action, choses in action, and my rights and interests therein, both at law and in equity, as well in possession as in expectancy, to be held by her in her own right, and as her separate estate.

" And, whereas, I have had certain dealings with said bank as trustee for my said wife, some of which dealings are *separated* [*sic*] by pass-book, also issued to me by said bank as such trustee, which book is now marked ' G ' with my initials S. C., I hereby sell, assign, transfer, and set over to my said wife my said pass-book marked ' G,' together with all moneys due me from said bank as trustee or otherwise; for deposits of money in said bank, interest thereon, dividends, rights and causes of action against said bank.

" SAMUEL CROSS.

" SACRAMENTO, June 7, 1881."

The term assignment refers to a class of acts by which the right or title to something of value is transferred to another before the object of the transfer has become property in possession. The assignment of such property is considered in law as an authorization to the assignee to reduce it to his possession ; a right under a contract express or implied which has not been reduced to possession is, therefore, an assignable *chose in action.* But if the right has been reduced to possession, there is nothing left to transfer, and an assignment passes no property or

right of property.   So, a pass-book representing deposits made in a bank is assignable ; the assignment of the book transfers an equitable title to any deposits represented by the book; but when the book represents nothing but accounts of deposits, dividends, etc., which have been adjusted and settled in full between the depositor and the bank, there is nothing of which a transfer can be made ; for the settlement between the parties, as represented by the book, is binding and conclusive upon them and their privies.

" Principle and public policy," say the Supreme Court of Wisconsin, " alike require that when parties, after a fair opportunity of examining and deciding upon their mutual accounts, have adjusted and settled them, the settlement should be conclusive.   Any other rule would be dangerous and oppressive, and often work the greatest injustice." (*Klauber* v. *Wright*, 52 Wis. 313.)   So in *Murphy* v. *The United States*, 14 Otto, 464, the Supreme Court of the United States recently ruled that when a claim arising out of an account has been settled by the parties upon a basis of adjustment to which they agreed, and the money found due has been accepted in full payment, the settlement is equivalent to a final settlement of all the items of the claim included within the account, and is a bar to a suit upon the claim.   And in equity the rule is well established, that an account once settled cannot be avoided or impeached by any of the parties to the settlement, except by an action in equity to set aside the settlement for fraud, or to surcharge and falsify the account for mistakes or errors. (*Chambers* v. *Goldwin*, 9 Vesey, Jr. 254 ; 1 Edw. 1, 293.)

Unless assailed in that way by one of the parties, the settlement is conclusive.

Samuel Cross never questioned the settlement between himself and the bank.   On the contrary, with full knowledge that his accounts had been repeatedly stated and balanced, and finally closed, he acquiesced in the same for nine years after his accounts had been stated and balanced in 1871; for four years after they had been stated and balanced in 1876; and for thirteen months after their final settlement in April, 1880, and after all relation between him and the bank had ceased.   There is no averment that he ever discovered any fraud or mistake in

the accounts, and he never attempted to assail their settlement.

Under such circumstances, his acquiescence must be considered a waiver of any fraud, errors or mistakes in the settlement; and against him the settlement was conclusive.

That being the case, there was no valid enforceable possibility or expectancy in the things which were the subject of settlement between him and the bank, or any right of action arising therefrom. He had reduced them to his possession; the deposits, etc., represented on the pass-books, having been paid, were extinguished, and the assignments of the books by him to his wife transferred to her no available interest or right. She became, under the assignment, a mere nominal holder of the books, without interest in anything represented by them; and in that position she acquired no right to assail the settlement of her assignor for fraud or mistake of which he has made no complaint. Such a right is not assignable, on the ground of public policy. (1 Parsons on Cont. 226.) "An assignment of a bare right to file a bill in equity for a fraud committed on the assignor will be held void, as contrary to sound policy." (Story's Eq. 1040.)

We find no prejudicial errors in the record.

Judgment and order affirmed.

SHARPSTEIN, J., McKINSTRY, J., and MYRICK, J., concurred.

Rehearing denied.