WESTMINSTER NATIONAL BANK *vs.* BOSTON AND MAINE RAILROAD.

Worcester. September 25, 1922. — April 26, 1923.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Limitations, Statute of. Interstate Commerce Commission. Assignment. Contract, Implied.*

A shipper of milk from various towns in the States of Vermont and New Hampshire to Boston brought a complaint before the Interstate Commerce Commission against nine carriers, including three railroad corporations, for violations of the interstate commerce act as amended, and, before a decision by the commission, assigned to a bank "all money that" he might recover on his complaint "for reparation against" the carriers "for overcharge for transportation of milk from Vergennes, Vermont, to Boston." Due notice of the assignment was given to a certain one of the railroad corporations. The commission then decided, among other matters, that the railroad corporation so notified should pay damages in a certain amount to the shipper, and disregarded the assignment for lack of jurisdiction to deal with it. The railroad corporation in question refusing to make payment, the shipper in his own name brought an action to enforce payment, and also brought sundry other actions against the same corporation and others on other matters, and a compromise settlement, to which the bank, assignee, was not a party, was made between the shipper and the railroad corporation adjusting all such litigation. More than two years after the decision by the interstate commerce commission, the bank began an action of contract against the railroad corporation with a declaration in three counts, seeking, in the first and second counts, recovery of the entire amount of the award made by the commission against the defendant, and, in the third count, of only so much of the amount of the award as was not shown to have been properly applicable to other claims shown by the terms of the compromise. The defendant pleaded the statute of limitations, 41 U. S. Sts. at Large, 484. A judge, who heard the action without a jury, found for the plaintiff for nominal damages. *Held*, without determining other defences put forward by the defendant, that,

(1) The action was independent of any previous action brought by the assignor within the period of limitation in which he ignored rights of the plaintiff and sought to recover the award for his own benefit;

(2) The action was barred as to the first and second counts by § 16 of the interstate commerce act, 41 U. S. Sts. at Large, 491, 492;

(3) No recovery could be had under the third count because the bank was not a party to the award or the compromise and acquired no rights thereunder;

(4) The amount apparently received by the defendant and not paid over to the assignor could not be reached as money had and received by the defendant to the use of the plaintiff for the reason that the plaintiff had no enforceable claim to the award or any part of it;

(5) Judgment should have been entered for the defendant.

CONTRACT against the Boston and Maine Railroad by the assignee of Ida S. Graustein of "all money that she may recover on her petition to the Interstate Commerce Commission for reparation against the Boston & Maine R. R. et al. for overcharge for transportation of milk from Vergennes, Vermont, to Boston, Massachusetts." Writ dated January 14, 1920.

The pleadings are described in the opinion.

In the Superior Court, the action was heard by *Wait,* J., without a jury. Material evidence, rulings and exceptions by the parties are described in the opinion. The judge found for the plaintiff in the sum of $1; and both parties alleged exceptions.

*H. W. Blake,* (*R. W. Simonds* with him,) for the plaintiff.

*C. M. Thayer,* for the defendant.

BRALEY, J. The plaintiff's assignor, Ida S. Graustein, a shipper of milk to Boston, Massachusetts, from various towns in Vermont, among which was the town of Vergennes, and in New Hampshire, over the road of the Rutland Railroad Company, and the railroad of the defendant, filed on February 12, 1915, with the Interstate Commerce Commission a complaint against the defendant and eight other carriers alleging, that "the defendants Boston and Maine Railroad and Rutland Railroad Company, at request of the complainant, have refused to establish the following, namely: (a) Joint rates, or a tariff similar to the one filed by the Maine Central Railroad Company in connection with the Boston and Maine Railroad, being tariff I. C. C. No. C 1811. (b) Maximum rates. (c) Proper cars. (d) Receiving and loading stations for pasteurizing, icing and cooling milk, similar to those furnished to other shippers of milk to Boston and suburbs and New York, from same points of shipment, or from interstate points located in other sections or in other States and located similarly to shipping points of complainant. (e) Proper and reasonable train

service. Thereby discriminating against the complainant to her detriment and causing her money and business losses, and in violation of Sections 1, 2 and 3 of the Act to Regulate Commerce." The complaints against six of the remaining respondents need not be quoted. The petition was amended February 17, 1916, the particulars of which are not shown by the record, although it is stated in the brief of counsel for the defendant that the amendment added "several prayers." Interstate Commerce Act of February, 1887, c. 104, § 13, as amended. 24 U. S. Sts. at Large, 383. 36 U. S. Sts. at Large, 550. 41 U. S. Sts. at Large, 484. While the proceedings were pending she executed and delivered on January 10, 1916, to the plaintiff as collateral security for money lent, an assignment, the material portion of which reads, "Ida S. Graustein hereby assigns all money that she may recover on her petition to the Interstate Commerce Commission for reparation against the Boston and Maine R. R. et al. for overcharge for transportation of milk from Vergennes, Vermont, to Boston, Massachusetts," due notice of which was given to the defendant. It appears that at the hearing before the commission May 5, 1916, the Boston and Maine Railroad, the Maine Central Railroad Company, and the Rutland Railroad Company, were the only respondents who contested the allegations of the petition. The commission on June 21, 1917, after "full investigation of the matters and things involved" say that "in consequence of the violations of the act above found, we are of opinion and find that complainant was damaged in the sum of $30,518.62; of which amount $13,847.01 is due from the Boston and Maine Railroad, with interest . . .," and on June 21, 1917, ordered "That the Boston and Maine Railroad be, and it is hereby, authorized and directed to pay unto complainant, Ida S. Graustein, on or before September 1, 1917, the sum of $13,847.01, with interest thereon at the rate of six per cent per annum from March 8, 1916, as reparation on account of damages due to violations of provisions of the act with respect to the shipments of milk in carloads from certain points in Vermont on the line of the Rutland Railroad to Boston, Mass., as more fully and at large set forth" in the report of the commission. The commission, although it had been introduced, disregarded the assignment, because "The statute empowers to us to award reparation to the party injured . . . .

The fact that she may have assigned any part of the award is not a matter of which we may take cognizance." The award was valid. *Texas & Pacific Railway* v. *Abilene Cotton Oil Co.* 204 U. S. 426. *Boston* v. *Edison Electric Illuminating Co. of Boston,* 242 Mass. 305. But the defendant declined to make payment and the assignor attempted to collect by suit. The record also shows that actions concerning other matters in dispute were instituted either between her and the railroad or certain organizations in which she or her husband were interested. By an agreement of compromise to which the bank was not a party, the entire litigation was terminated and appropriate entries disposing of the cases were made. The plaintiff in the present action subsequently brought, seeks by the first two counts to recover the entire amount awarded, and by the third count, the amount paid under the agreement of compromise. It is contended by the defendant, that the assignment covers a particular thing to come into existence in the future, and does not embrace other claims or demands for which reparation was sought or awarded, and is limited to "all money that she may recover" for overcharges between the places; and being a partial assignment it is not enforceable in an action at law. See *Security Bank of New York* v. *Callahan,* 220 Mass. 84; *Andrews Electric, Inc.* v. *St. Alphonse Catholic Total Abstinence Society,* 233 Mass. 20; *Jennings* v. *Whitney,* 224 Mass. 138; *Cross* v. *Sacramento Savings Bank,* 66 Cal. 462; *Cogan* v. *Conover Manuf. Co.* 3 Rob. (N. J.) 809. It is further urged that the award is not evidence of the defendant's liability, that even if the award is valid, the plaintiff has failed to identify the security, or to establish the amount of the debt secured, or to prove what part of the award related to the item specified in the assignment, that the settlement with the assignor moreover bound the bank, which is subject to all the defences that would have been available if the action had been brought by the assignor, and that not having intervened when its officers or agents had information that a compromise was being arranged, it is estopped from enforcing the agreement. It is unnecessary, however, to consider these matters of defence, or whether as the plaintiff maintains they are foreclosed by the decree in the suit in equity brought January 29, 1920. By § 16 of the act, 41 U. S. Sts. at Large, 491, 492, if the carrier does not comply with an

order for the payment of money within the time prescribed, any person for whose benefit it is made, "may file in the circuit court of the United States for the district in which he resides . . . or in any State court of general jurisdiction having jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the commission . . . . A petition for the enforcement of an order for the payment of money shall be filed in the district court or State court within one year from the date of the order, and not after." The present action was begun January 14, 1920, more than two years after the date of the award. It is independent of any prior action brought within the period by the assignor in which she ignored any rights of the plaintiff and sought to recover the award for her own benefit. R. L. c. 173, § 4. *Gilman* v. *American Producers' Controlling Co.* 180 Mass. 319. The statutory limitation having been duly pleaded is a complete bar. *Kansas City Southern Railway* v. *Wolf*, 43 Sup. Ct. Rep. 259. The defendant's twenty-eighth request, that if the plaintiff ever had any right to enforce the award, the right is barred by the limitation as set forth in the Interstate Commerce Act, should have been given. The third count of the declaration alleges that the plaintiff is entitled to recover so much of the amount of the award as is not shown to have been properly applicable to other claims shown by the terms of the compromise. But the plaintiff, although its cashier might be found to have known of what was being attempted, was as we have said not a party to the compromise and acquired no rights under it. The amount apparently received by the defendant and not paid over to the assignor cannot be reached as money had and received for the sufficient reason that the plaintiff has no enforceable claim to the award or any part of it. It follows that while the plaintiff was not entitled to recover even nominal damages as assessed by the trial court, and its exceptions accordingly must be overruled, the defendant's exceptions must be sustained and judgment for it is to be entered.

*So ordered.*