ROCK SPRINGS COAL & MINING CO. (LAMMERS, INTERVENER) v. BLACK DIAMOND COAL CO., ET AL.
(No. 1520; November 27, 1928; 272 Pac. 12)

380

*Louis Kabell, Jr.* of Evanston, and *Marion A. Kline,* of Cheyenne, for appellant, Black Diamond Coal Co.

382

*Louis Kabell, Jr.* and *Marion A. Kline,* for appellants, Toy and Kline.

*T. S. Taliaferro, Jr.* and *Arthur Lee Taliaferro,* for respondent.

*Marion A. Kline* and *Louis Kabell, Jr.,* in reply.

*Haggard & O'Mahoney* and *R. L. DeNise,* for Lammers, intervening plaintiff.

386

RINER, Justice.

In this case, by direct appeal, a review is sought of a decree of the District Court of Sweetwater County, Wyoming, quieting title to certain coal lands situate in that county in favor of the Rock Springs Coal & Mining Company—hereinafter designated as the "plaintiff"—and against the Black Diamond Coal Company—referred to subsequently herein as the "Black etc. Co."—Marion A. Kline, James F. Toy, and Harry E. Carleson, enjoining the last four mentioned parties from exercising or claiming any right or title to said lands, cancelling certain conveyances relating to the lands and adjudging plaintiff its costs. The decree also adjudged that one A. K. Lammers held a mortgage lien upon the premises involved in the suit which was superior to any lien, claim, title or interest of any of the other parties to the action. A foreclosure of this lien

was ordered and a sale of the property directed to meet the amount due on the mortgage and for attorneys' fees thereunder, this amount being found to be $13,860, and the attorneys' fees $800. Reserving exceptions to the findings of fact and conclusions of law of the decree, the Black etc. Co., Marion A. Kline, James F. Toy, and Harry E. Carleson, bring the record to this court in the manner already indicated asking that the decree be reversed.

On November 27, 1923, the plaintiff instituted suit to quiet its title to the aforesaid mineral lands, against the Black etc. Co., Marion A. Kline, James F. Toy and Harry E. Carleson, as defendants, plaintiff alleging that it was in actual possession of the property, that the defendants claimed an interest therein adverse to plaintiff and were advertising the lands for sale. The relief asked by the petition was that defendants disclose their interests, that these be adjudged void, plaintiff's title to the property quieted as against same, and that defendants be enjoined from advertising the land for sale or otherwise interfering with plaintiff's rights. Thereafter the defendants Kline and Toy, on June 3, 1924, filed a separate answer, wherein they set out matters tending to show the alleged invalidity of plaintiff's chain of title to the property and asserted title thereto in themselves by virtue of a certain prior decree of the District Court of Sweetwater County and proceedings had by them under it—all of which will later be described more in detail. The defendant Black etc. Co., on June 4, 1924, answered separately, also claiming title in itself to the property in controversy, by reason of a certain receivers' sale of, and deed to, said land, made in accordance with certain previously entered orders of the court last mentioned and sundry, subsequent, mesne conveyances to this defendant, and also by virtue of certain proceedings had by it under the prior decree described in the separate answer of Kline and Toy which resulted in the sale of said property upon execution and the issuance of a sheriff's deed to the Black etc. Co. A cross petition, based upon

these several alleged sources of title, was also incorporated in this answer, and relief was prayed that title to the premises be quieted in the Black etc. Co., and that the plaintiff take nothing by its suit. The separate answer filed by the defendant Harry E. Carleson disclaimed any interest in the real estate described in the plaintiff's petition. On December 11, 1925, and January 20, 1926, respectively, replies to the answers of the defendants—other than Carleson—were filed by plaintiff, consisting of specific denials and admissions of the allegations in those pleadings, and averments of new matter undertaking to show the alleged invalidity of defendants' claimed titles to the property in suit. Among the items of new matter thus set forth in these replies, appears the averment of a former adjudication of the title to these coal lands by the District Court of Sweetwater County on March 2, 1918, as between the grantor of the plaintiff, one M. Mitter, and the defendant Black etc. Co., a verbatim copy of the decree in that matter being attached to and made a part of plaintiff's pleading.

Meanwhile one A. K. Lammers had, on November 20, 1925, filed his petition for leave to intervene in the suit, alleging the pendency of an action—also in the District Court of Sweetwater County—brought by him against the plaintiff and others to foreclose a mortgage upon the property involved, said mortgage having been given him by the above mentioned M. Mitter, plaintiff's grantor, and also asserting that plaintiff's title was subject to the petitioner's claim under the lien of this mortgage. On December 31, 1925, by stipulation of counsel for all parties, Lammers came into the suit as intervenor, and it was further stipulated that his mortgage foreclosure suit should, for the purpose of trial, be consolidated with the case at bar. Accordingly, on January 28, 1926, Lammers filed replies to the separate answers of Kline and Toy and the Black etc. Co. These pleadings, in substance, set out the intervenor's claim under his mortgage lien from Mitter, and also pleaded the former adjudication in the latter's favor under date of

March 2, 1918, already mentioned, against the Black etc. Co. Intervenor alleged also that Kline and Toy obtained no rights to the property in question because their assignee, one John Ballachey, had had his interest therein previously extinguished by a sale of said property pursuant to a judgment of the District Court of Sweetwater County rendered September 16, 1913.

On June 24, 1926, upon the application of the Black etc. Co., Marion A. Kline and James F. Toy, constructive service of process was ordered to be made on certain additional parties, among whom were M. Mitter and A. T. Mitter, calling upon them to answer the plaintiff's petition and the cross petition of the applicants. Due service by publication upon these parties was accordingly had.

Reference has heretofore been made to the foreclosure suit brought by A. K. Lammers in the court below, which was consolidated with the instant case for trial. The defendants in that action were M. Mitter, Clarence A. Miller, Rock Springs Coal and Mining Co., and Black Diamond Coal Company—the last two named parties being respectively the plaintiff and one of the defendants in the cause now being considered. The petition to foreclose, filed July 5, 1922, was in the usual form against M. Mitter, the mortgagor, upon a note dated August 24, 1918, for $8,000, due two years from date with interest at 8 per cent per annum, and mortgage given to secure the same, and asserted that the other defendants claimed some interest in the mortgaged premises, but that, if any they had, it was subject to the mortgage lien. To this petition the Rock Springs Coal and Mining Co. made answer, admitting the execution and delivery of the mortgage sued upon, and that the indebtedness remained unpaid, denying, however, that the interest of said company was subject to the lien claimed. Lammers filed a reply to this answer in the form of a general denial. Thereafter and on June 12, 1923, Black etc. Co. filed its answer and cross petition in the suit wherein it claimed title superior to M. Mitter, Lammers' mortgagor,

alleging facts claimed to show the invalidity of Mitter's chain of title, and set out its own claim of right to the land in question, substantially as pleaded in its answer heretofore outlined in the case at bar. A reply was filed by Lammers to this answer and cross petition, which consisted largely of denials of the allegations contained therein and affirmatively pleaded the former adjudication in the court below in favor of M. Mitter and against the answering defendant by the decree of March 2, 1918 heretofore mentioned. By agreement of counsel, separate answers of John Ballachey, M. A. Kline, and James F. Toy were, on January 17, 1924, filed in the case, that of John Ballachey being a disclaimer of any interest in the property in suit, and that of Kline and Toy being in substance similar to the answer made by them in the case now before us and hereinabove briefly reviewed.

The suit was, on January 28, 1927, tried to the court without a jury, and on November 7, following, the decree already described was entered in favor of plaintiff and the intervenor A. K. Lammers.

There appears to be no serious dispute concerning the facts of this controversy, the oral testimony adduced being mainly for the purpose of identifying and properly proving the documentary evidence of which the record principally consists. The differences between the parties grow out of their divergent interpretations of the legal effect to be given the evidence, and hence the questions for solution are, in the main, questions of law. The facts material to a proper understanding of the contentions of the respective parties and to the disposition of the case, as we view it, are as follows:

The Sioux City & Rock Springs Coal Mining Company—for brevity hereinafter designated the "Coal Company"—a Wyoming corporation, was, on February 28, 1907, the owner in fee of some 440 acres of coal lands situated in Sweetwater County, Wyoming. It apparently also held some so-called forest lieu scrip, which had been entered

upon certain other lands in said county, the same being public lands of the United States. The corporation had its principal office in Sioux City, Woodbury County, Iowa, but its physical property was, as has been noted, located in Wyoming. On the date last mentioned, the District Court of said Woodbury County, entered an order in a suit for a receivership therein brought by one A. T. Riffle, one of its stockholders, against the Coal Company and certain other stockholders and some of its officers, charging mismanagement of company affairs and threatened dissipation of the Coal Company's property, said order purporting to appoint A. B. Beal receiver of the books, records and accounts, and the physical assets of the Coal Company, "consisting of a coal mine in Sweetwater County, Wyo." Thereafter, on March 4, 1907, a suit numbered 471, of similar character as the one last above described and against the same defendants as in the Iowa litigation, was instituted against the Coal Company in the District Court of the county last mentioned, by the same A. T. Riffle, and on that date, without notice, a receiver was appointed by the court who subsequently resigned, and Beal, the Iowa receiver, was selected and duly qualified in his stead April 17, 1907. The Coal Company and certain of the defendants in due time answered, putting in issue the allegations of the Riffle petition.

On July 10, 1907, the District Court of Woodbury County, Iowa, made an order returning the Coal Company's books to its trustees and authorized them to "take such steps and to make such contracts as said Board deems necessary and desirable for the proper equipment, development and operation of the property belonging to" the Coal Company. Pursuant to this authority, evidently, the Coal Company executed a trust deed covering the real property here in controversy, to secure by lien thereon a proposed bond issue of $60,000. The Peters Trust Company, a Nebraska corporation, was designated therein as trustee, and the instrument bore date October 1, 1907. It was not

acknowledged, however, until September 15, 1908, by the Coal Company's officers, and September 24, 1908, by the officials of the Peters Trust Company. It was placed on the records of Sweetwater County, Wyoming, October 5, 1908. Relative of the rights of the trustee thereunder, the trust deed, among other provisions, contained this clause:

"The Trustee shall have a lien upon the property hereby conveyed and the proceeds thereof, prior and paramount to the lien of the bonds issued hereunder, and the interest thereon, for its reasonable expenses, counsel fees and compensation incurred in the execution or on account of the trust hereby created."

The record does not show that any bonds were ever issued in accordance with the terms of this instrument.

November 10, 1908, on the application of one B. F. Bogenrief, claiming to represent a number of stockholders of the Coal Company, he was appointed by the District Court of Sweetwater County joint Receiver with Beal of the Coal Company. On the 29th of November, 1909, the Receivers applied to the court for leave to sell said real estate of the Coal Company to meet certain indebtedness alleged to have been incurred by them and by the Coal Company and listed in their application as totaling $15,630.58. After notice and hearing, an order of sale was made upon December 10, 1909, which directed the disposition not only of the real property, whose sale had been asked for by the receivers, but also the forest lieu scrip heretofore mentioned, the sale of which had not been sought. On March 5, 1910, sale of all this property was had upon published notice given, and a report of same made to the court showing that the property had been purchased by one W. D. Creglow for the sum of $22,600.

Meanwhile and on January 4, 1910, while these sale proceedings were pending in Wyoming, the Coal Company appears to have given a mortgage upon the real property and scrip aforesaid to one James F. Toy of Woodbury

394

County, Iowa, to secure an indebtedness of $9648.71, the mortgage being recorded in Sweetwater County, Wyoming, on January 25, 1910. This mortgage was, on March 2, 1910, assigned to one John Ballachey, also of Woodbury County, Iowa.

On March 7, 1910, after an order had been made by the court confirming this sale, W. D. Creglow was given a receivers' deed to all the property described in the order of sale aforesaid, the deed being placed of record in Sweetwater County the following day. Creglow transferred his interest in the property to one Sweetser, by deed recorded May 9, 1910, and the latter, by conveyance dated December 28, 1910, recorded September 16, 1913, passed his title to the Black etc. Co., one of the defendants in the case at bar.

Proceedings in error to review the order of sale of December 10, 1909, already referred to, were instituted by A. T. Riffle, plaintiff in the receivership suit, and on July 1, 1912, this court filed an opinion (Riffle v. Sioux City and Rock Springs Coal Mining Co., 20 Wyo. 442), whose concluding sentence reads: ''The order of the District Court directing the sale of the property is reversed, and the cause remanded for further proceedings.'' But no further proceedings appear to have been taken in the cause.

On February 4, 1913, the Black etc. Co. instituted a suit numbered 272 in the District Court of Sweetwater County, Wyoming, against the Coal Company, A. T. Riffle, John Ballachey, Peters Trust Company, Peters Trust Company Trustee, and others, wherein the action of this court reversing the order of sale aforesaid was pleaded, its succession to the rights of the purchaser thereunder was set forth and its subrogation to the rights of the creditors of the Coal Company, who had been paid by the receivers with the money derived from the sale, was sought. The petition alleged that the defendants other than the Coal Company had or claimed some interest in the real property and forest lieu scrip aforesaid, but that their rights were inferior to those of the Black etc. Co. As relief it was asked that the

sum of $22,600, paid at the receivers' sale as purchase money by Creglow, its predecessor in interest, and $1114.84, with interest from December 11, 1911, paid by the Black etc. Co. to protect the property and its interest therein, be adjudged a prior lien thereon.

No affidavit for constructive service on the Peters Trust Company and Peters Trust Company Trustee appears to have been filed in the action, but a copy of the summons and petition therein seem to have been served at Omaha, Nebraska, on one Wynn Rainbolt, Secretary of Peters Trust Company, by one Ed Cassidy, whom the record does not show to have been appointed to make such service by the Sheriff of Sweetwater County, as required by law. Neither Peters Trust Company nor Peters Trust Company Trustee ever entered its appearance or filed any pleading in the case. A. T. Riffle appeared in the action as did the Coal Company, the latter filing two separate answers. John Ballachey filed an answer and cross petition, wherein he asked a prior lien upon said real property and forest lieu scrip by virtue of his rights claimed under the Toy mortgage assigned to him as above recited. A reply was filed by the Coal Company to Ballachey's answer and cross petition, putting their allegations in issue.

On September 16, 1913, a decree in the suit was entered by the District Court of Sweetwater County. The decree found that due and regular service of summons had been had upon all of the defendants who had not appeared in the action, including the Peters Trust Company and Peters Trust Company Trustee, and all were adjudged to be in default; it also found in favor of the Black etc. Co. and John Ballachey, and decreed that the Black etc. Co. be subrogated to all of the rights of the creditors of the Coal Company, for whose benefit the property was sold by the receivers in cause No. 471, as above described. A personal judgment against the Coal Company for the sum of $22,600, with accrued interest, was given and a lien for that amount was fixed upon the aforesaid real estate and

forest lieu scrip owned by it. The decree also gave John Ballachey a personal judgment against the Coal Company for the sum of $11,358.87 and a lien upon the Coal Company's property for that amount, subject, however, to the lien of the Black etc. Co. It was further ordered by the decree that the property of the Coal Company be sold upon execution to satisfy these liens. No review of this decree by this court was ever asked by any of the parties to it.

While the litigation last above described was in progress and on February 21, 1913, the Peters Trust Company resigned as Trustee under the trust deed executed by the Coal Company, its resignation to take effect upon acceptance thereof by the Coal Company. October 3, following, the Trustee's resignation was accepted, and M. Mitter was, by resolution, appointed in its place. On the 7th of that month, A. T. Riffle (who subsequently appears to have married M. Mitter), at Omaha, Nebraska, paid to the Peters Trust Company the amount of its bill for attorney's fees and services rendered as Trustee under said trust deed, this amount being $300. At her request, an assignment, general in form, not specifying the amount of the claim, with power to collect by suit, was immediately made by the Peters Trust Company to M. Mitter.

On October 21, 1913, execution was issued under the decree in case No. 272 outlined above, upon application of the attorneys for the Black, etc. Co., and such proceedings were had under it that on January 10, 1914, the real estate and forest lien scrip aforesaid was sold to that company for the sum of $29,800, and a sheriff's certificate of sale was duly issued to it. No one undertaking to redeem from this sale, on November 24, 1914, a sheriff's deed to the property was given the Black, etc. Co. and placed of record in Sweetwater County, Wyoming, January 15, 1915.

While these proceedings under this execution were being conducted, and on October 31, 1913, M. Mitter assigned the Peters Trust Company claim to one W. B.

Hay. Sometime during the first week in December, 1913, Hay instituted a suit numbered 344 in the District Court of Sweetwater County, against the Coal Company, the Black etc. Co. and Matt McCourt, Sheriff of Sweetwater County, apparently to recover upon the aforesaid assigned claim of the Peters Trust Company. The pleadings in the case are not in the record before us. On December 19, 1913, Hay assigned to M. Mitter his interest in any judgment that might be recovered in the action. January 16, 1914, on motion of Hay's attorney, an order was entered therein dismissing the Black etc. Co. and Matt McCourt, Sheriff, from the case. A decree dated May 19, 1914, seems to have been entered and a certified copy thereof in the record recites that a "complaint" and answer of the Coal Company thereto had been filed; that Hay was the owner of the Peters Trust Company claim by mesne assignments thereof; that the answer of the Coal Company confessed judgment for $8,000 on this claim—though how the $300 claim of the Trust Company expanded to this amount does not appear—and confessed also that this amount of $8,000 should be a first lien upon the aforesaid property; and that accordingly a judgment as confessed should be and was given and the property sold to satisfy the adjudged lien in the sum of $8,160, including interest.

On October 2, 1914, M. Mitter assigned his judgment to one C. H. Beeler, who sued out execution under it, and on November 16, 1914, the Sheriff of Sweetwater County appears to have sold all the Coal Company's property, including the real estate aforesaid, pursuant to the command of the execution, the property being purchased by Beeler for $8,395.75, to whom a certificate of sale was issued by the officer. It does not appear that any deed was ever given by the Sheriff to Beeler, and the latter, on March 23, 1915, assigned all his interest in this certificate of sale

to M. Mitter. August 18, 1916, Beeler also gave a quitclaim deed to Mitter, covering the property thus sold.

The record also discloses that thereafter and on January 12, 1917, M. Mitter commenced a suit, numbered 608 in the District Court of Sweetwater County, against the Black etc. Co. Process was duly served upon T. S. Taliaferro, Jr., in person, recited by the Sheriff's return to be "the agent of said defendant in charge of its principal office in this state," on January 13, 1917. The petition in the action alleged, among other things, that M. Mitter was the rightful owner of, and entitled to the undisturbed possession of, the real estate now in dispute by virtue of the assigned claim of the Peters Trust Company under the trust deed aforesaid and also by virtue of the deed from C. H. Beeler to M. Mitter of date August 18, 1916; that the receiver's sale, in case No. 471, supra, was had to satisfy false, fictitious and fraudulent claims which the receivers had conspired to have allowed by the court; that W. D. Creglow, the purchaser, was not a bona fide purchaser, but both he and Sweetser, his grantee, were the agents of named parties who conspired with the receivers Beal and Bogenrief to cheat and defraud the majority stockholders of the Coal Company; that the parties who organized the Black etc. Co. and became its stockholders and officers were the parties who conspired with the receivers aforesaid to injure and defraud the Coal Company and its stockholders. The petition further specifically— in several particulars unnecessary to recite here—charged fraud and imposition upon the court on the part of one of the attorneys for the Black etc. Co. in obtaining the decree in favor of that company in case No. 272 heretofore outlined. The pleading by way of relief, asked that the deed from the Sheriff of Sweetwater County under the sale had pursuant to the court's decree in case No. 272, be declared void and annulled; that plaintiff be adjudged the rightful owner of said real estate.

Within the time fixed by law for responding to this pleading, the Black etc. Co., did nothing. June 6, 1917, the court made an order reciting substantially that on March 14, 1917, the cause came on to be heard upon plaintiff's petition, evidence and arguments, the defendant being in default, and finding that "the petition and the evidence are not sufficient to warrant the court in finding in favor of plaintiff;" it was, therefore, ordered that the action be dismissed. A motion for a new trial alleging, among other grounds, newly discovered evidence, was, on June 20, 1917, filed by M. Mitter's counsel. July 9, following, the cause was reinstated and M. Mitter was granted a new trial by court order signed that day. Nothing further appears to have been done in the cause until October 6, 1917, when the Black etc. Co. filed a motion asking that its default be set aside, that it be permitted to file a tendered answer and allowed to make a defense. This proposed answer, had it been permitted to be filed in the case, would have raised, in large measure, the same issues as are undertaken to be litigated in the case at bar. The motion was supported by affidavits endeavoring to explain its delay in appearing and tendering a pleading in the case.

This motion was not passed upon by the court until March 2, 1918, when an order was entered simply that "the court on consideration overruled the same." The same day the court made extended findings of fact and conclusions of law wherein it was found, among other things, that the answer tendered with the motion to set aside the default of the Black etc. Co. did "not set forth a meritorious defense." A decree was immediately entered in favor of M. Mitter, dated March 2, 1918, reciting that the court, having heretofore heard plaintiff's evidence and arguments, found all the issues favorable to M. Mitter, and adjudged that the Sheriff's deed of date November 24, 1914, to the Black etc. Co., be set aside

and annulled; that plaintiff's title to the real estate in controversy be quieted against the claims of the Black etc. Co., its successors or assigns, and that M. Mitter was entitled to the immediate possession of the property.

An effort was made by the Black etc. Co. to have the decree so rendered reversed by this court and proceedings for that purpose were instituted by way of error and by direct appeal, but the result was, on account of failure to obey the statutes and rules governing appellate practice, that both were dismissed and the order of the court below denying that company's motion for a new trial was affirmed April 18, 1922. See Mitter v. Black etc. Co., 27 Wyo. 72, 78, 191 Pac. 1069, 193 Pac. 520, Id., 28 Wyo. 439, 206 Pac. 152. ·

Subsequent to the entry of the decree in case No. 608, supra, and on August 24, 1918, M. Mitter executed a note for $8,000, due in two years with interest at eight per cent per annum, in favor of A. K. Lammers—the intervenor in the instant case—and to secure the same made and delivered the mortgage now sought to be foreclosed upon the real property aforesaid. This mortgage remains unpaid. By two warranty deeds, dated July 18, 1919 and January 31, 1923, respectively—the latter one being designated a correction deed—M. Mitter transferred his interest in the property in question to the plaintiff.

Recurring again to the decree in case No. 272 hereinbefore described as entered on September 16, 1913, the record shows that on October 2, 1923, John Ballachey filed a motion for the appointment of Harry E. Carleson as Special Master Commissioner to sell this property again under that decree. Such proceedings were subsequently had that a sale of the land was made on December 9, 1923 to James F. Toy and Marion A. Kline for the sum of $20,632.85—the two parties last mentioned having been, on June 4, 1923, assigned John Ballachey's interest in the decree in case No. 272. January 19, 1924,

this sale was confirmed by the court and thereafter, no redemption being made by anyone, the Special Master Commissioner, on January 31, 1925, gave his deed covering the land to the said James F. Toy and Marion A. Kline.

With this outline of the facts involved in the consolidated causes before us, gleaned from quite an extensive record, we turn to an examination of the contentions of the respective parties regarding it. On behalf of the Black etc. Co., the validity of its title obtained by mesne conveyances from W. D. Creglow, the purchaser at the receivers' sale in case No. 471, supra, as well as its claim of title procured through execution sale and deed to it thereunder in the subrogation suit No. 272, supra, are presented with many arguments, and it is insisted that nothing that has occurred since those alleged titles were vested in it could or has in any way impaired their vitality; hence they should control and the decree now under review should be reversed. The plaintiff and intervenor, while seriously questioning the legality of the receivers' sale of the Coal Company's property in case No. 471, supra, and while asserting that their predecessor in interest, the Peters Trust Company was, on account of the utterly void service of process upon it, never bound by the decree in case No. 272, and hence they are not, claim the binding and conclusive effect of the decree of the District Court of Sweetwater County in case No. 608, supra, as against the Black etc. Co., defendant in that action. As we view the controversy, the contention of plaintiff and intervenor, regarding the conclusive consequences of the adjudication in case No. 608, against the Black etc. Co., should be considered first; for if that should be held to prevail, the disposition of many other questions presented by the record will be rendered unnecessary.

The proposition, that it is bound by the result of the litigation last above mentioned adverse to it, is resisted

by the Black etc. Co. upon a number of grounds. It is said that the plaintiff and intervenor, having brought the actions whose record is now before us, and having voluntarily reopened the question of the Black etc. Company's title to the land in controversy, they cannot urge that that company is estopped by the aforesaid decree. In brief, the position is that by contesting the Black etc. Company's claim upon matters involved in the merits of case No. 608, the Mitter suit, plaintiff and intervenor placed the entire dispute in condition to be relitigated in the case at bar.

In support of this view, an early decision of one of the Federal Courts in New York state, Mack v. Levy, (C. C.) 60 Fed. 751, is cited. But upon examination of that decision it appears that the estoppel pleaded seems to have not been regarded by the court as existing in the case, as, referring to the decree and opinion relied on, it was said concerning them: "They are precedents and not estoppels." The case of Philadelphia etc. R. Co. v. Howard, 13 How. 308, 14 L. Ed. 157, is referred to as in point on the proposition, but we do not find it so, for that case dealt with a situation where it was not possible to plead the estoppel of a previous judgment in bar, and yet held that, under such circumstances, it might be effectively shown in the evidence, and that the court below had properly instructed the jury on the matter. Our attention is also directed to the text of 34 C. J. 749-50, and especially to the case of Megerle v. Ashe, 33 Cal. 74. However, concerning these citations the Supreme Court of Oklahoma, in the rather recent case of Schwabacher v. Jennings, 118 Okla. 51, 246 Pac. 588, said:

"But defendants contend that plaintiffs waived the plea of *res judicata* by pleading to the merits and joining issue on the questions of fraud and innocent purchaser for value and by not objecting to evidence on these issues, citing the case of Megerle v. Ashe, 33 Cal. 74. Plaintiffs call our attention to the fact, in their reply brief, that

the holding contended for in this case was specifically overruled by Harding v. Harding, 148 Cal. 397, 83 Pac. 434. We have examined the case and find this to be correct. We have also examined note 19, pointed out by plaintiffs, under 34 C. J. 750, 'and find from the great weight of authority, as stated thereunder, that the general rule is to the effect that a defendant does not waive his rights under a judgment pleaded in bar by the mere act of also contesting plaintiff's claim on the merits.''

And in Hickey v. Johnson, 9 Fed. (2d) 498, at 504, the United States Circuit Court of Appeals for the Eighth Circuit, discussing the rule as to the consequences of failure to take advantage of a previous adjudication in favor of a party, remarked:

"We come now to consider the contention of appellees that the right to interpose this defense has been waived by appellant; this is based upon the conduct of appellant in joining issue with appellees, as tendered by their petition, without setting up the defense of *res adjudicata*. The general rule is thus stated: 'If a party fails to take advantage of a former recovery which would be available to him as a defense, he will be held to have waived the benefit of the estoppel, and the case may be determined as if no such former judgment had been rendered.' 23 Cyc. 1215; 34 *Corpus Juris* 749; Philadelphia etc. R. R. Co. v. Howard, 54 U. S. (13 How.) 334, 14 L. Ed. 157, and other cases cited in the texts.

"This rule has certain modifications and must depend upon the circumstances of the individual case; those circumstances must be of such a nature as to evidence the clear intention to abandon the defense, or to present a situation inconsistent with the assertion of that defense. National Brake & Elec. Co. v. Christensen, (C. C. A.) 278 Fed. 490; Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066; Harding v. Harding, 148 Cal. 397, 83 Pac. 434. In the latter case the rule announced in Megerle v. Ashe, 33 Cal. 74, upon which counsel for appellees in brief greatly rely, and which was cited by the trial Court in its opinion, was modified and in some respects disapproved.

"We think, before a party can be held conclusively to have waived this defense, he must have assumed a position so inconsistent with its assertion as to amount to an election to abandon it, or the proceedings must have reached such a stage that allowance of the defense would be inequitable."

Kinsey v. Duteau, 126 Wash. 330, 218 Pac. 230, also deals with the question now under consideration and there the following language was used:

"Finally, it is claimed that the respondents, by themselves commencing an action to quiet their title, have opened up anew the entire matter, have waived, as it were, the defense of *res judicata,* and that the court is now at liberty to decide as to the right of the matter, without regard to the adjudication in the former action. But we think this contention untenable. The appellants, notwithstanding the former adjudication, were asserting rights in the property. The respondents could not know on what facts these claims were based. They had the right, therefore, to commence an action asserting generally that such claims were made, and ask that their title be quieted. When the claimants set up the facts on which their claims were founded, it was permissible for the respondents to set forth in reply any defense thereto which they had, even though the defense thereto be *res judicata.* We do not, of course, decide that an estoppel by judgment cannot under any circumstances be waived. What we decide is that there was no waiver here."

See also Harding v. Harding, 148 Cal. 397, 83 Pac. 434; Reclamation District 785 v. Lovdal Brothers Co., 42 Cal. App. 271, 183 Pac. 598.

In the case at bar the plaintiff and intervenor each, by their pleadings, the evidence they introduced in the cause and their arguments here, have clearly relied upon the bar of the decree against the Black etc. Co. in case No. 608, though they introduced their chain of title based upon matters preceding that decree and took issue upon questions involved in it. We are inclined to the view that the au-

thorities we have quoted and referred to above declare the rule which should properly control here, and we do not think that the bar of the decree just mentioned has been waived by these parties.

It is urged that the District Court of Sweetwater County had no power or authority by its decree in case No. 608 to interfere with its previous decree in the Black etc. Company's subrogation suit No. 272—the term at which the latter was rendered having long since passed—and the case of Boulter v. Cook, 32 Wyo. 461, 234 Pac. 1101, 236 Pac. 245, and Sections 5923-32, W. C. S. 1920, are called to our notice. It is insisted that the statutory remedy thus provided is exclusive and that the district courts of this state cannot set aside a previous decree on the ground of fraud, unless it is done within the time and in the manner indicated by these sections of our statutes.

We do not consider the decision in Boulter v. Cook, supra, applicable to the facts here, as they appear by the record of case No. 608 introduced in evidence in the case at bar. In the Boulter case an attempt was made therein to vacate the judgment upon motion, and the motion not being interposed within the statutory period, it was held to be fruitless. In the situation we now have before us it is clear that the equitable powers of the court were invoked by a separate action brought to annul the earlier decree in case No. 272, and charging fraud and imposition upon the court by the Black etc. Company's counsel in obtaining the decree in that litigation. Process was issued and regularly served upon it and the Black etc. Co. was accorded the full statutory time to answer. The decision of this court in Harden v. Card, 17 Wyo. 210, 97 Pac. 1075, is, as we view it, in point. In that case both the statutory and equitable powers of the district courts of this state to set aside their former judgments after the term at which they were rendered has lapsed, were discussed in the following language:

"The time for commencing proceedings under this statute had expired. But plaintiff invokes the power of a court

of equity to enjoin proceedings on the judgment on the ground that it was obtained by fraud and perjury and that it would be unconscionable to enforce it. The defendant contends that the remedy provided by the statute is exclusive. But with that contention we cannot agree. Our statute appears to have been taken from the Ohio statute; and in Darst v. Phillips, 41 O. St. 514, the court said: 'In our opinion this statutory remedy is merely cumulative. It is not disputed that courts of equity, prior to the statute, had jurisdiction to impeach judgments for fraud, and enjoin proceedings thereon. It is a fundamental principle that when such courts have once been legitimately vested with jurisdiction they retain it, notwithstanding courts of law subsequently acquire jurisdiction by statute or otherwise, unless the legislature abolish or restrict it.' We concur in the views expressed by the Ohio court, and think the statute was intended to authorize the District Court to vacate its judgment and grant a new trial after the term for the causes stated; but not to abolish or restrict courts of equity in the exercise of the power to vacate judgments at law which have been obtained by fraud or perjury, against which the unsuccessful party had no opportunity to defend.''

In view of this statement of the law, which we consider to be correct in principle, our conclusion must be that the District Court of Sweetwater County had complete jurisdiction to act in case No. 608.

It is argued also that the court was without power in that case to cancel the sheriff's deed to Black etc. Co. or to adjudge the title to the land in question to be in M. Mitter, and to quiet his title thereto as against said company, because this relief was without the issues presented in that litigation and hence the decree is, in those respects, subject to collateral attack in the present action. The rule announced by this court in Yohe v. District Court, 33 Wyo. 281, 238 Pac. 545, is invoked, wherein it was said that:

''Where a court enters a judgment or awards relief clearly beyond the prayer of the complaint or the scope of its allegations, the excessive relief is, at least in default cases, void and open to collateral attack.''

We have heretofore, somewhat in detail, described the petition and the relief sought by it upon which the decree in case No. 608 was based. After careful examination and consideration of the matter, we do not think it can be fairly said that the relief granted in that decree was "clearly beyond the prayer of the complaint or the scope of its allegations." M. Mitter, in his pleading, claimed to be the rightful owner of the property involved and entitled to its undisturbed possession by reason of a certain chain of title set out. The title of the Black etc. Co. was alleged to rest solely upon a fraudulent receivers' sale and upon a decree obtained for it by fraud practiced through its agent upon the court. As relief the pleading asked the cancellation of the deed obtained by the Black etc. Co. under that decree and that M. Mitter be declared the rightful owner of the disputed property. Though it was not requested in so many words that Mitter's title be quieted as against the Black etc. Co., yet we fail to see why that relief was not proper, as against that company, when the court, following exactly the prayer of the petition, adjudged M. Mitter to be the rightful owner of the property.

Even if it be assumed that the trial court, in considering and passing upon the petition and the evidence offered under it, committed serious and fundamental errors of law, yet, as said in the Yohe case, supra:

"Courts in general are not yet prepared to go the extent of holding that an error of law, fundamental to the rights of the parties though it be, is necessarily the equivalent either of want or of excess of jurisdiction."

It must be remembered that the attacks of the appellants in the litigation at bar upon the decree in case No. 608, are collateral in character. That suit itself, however, was at least in the nature of a direct attack upon the decree in the earlier case No. 272, for, as said by Freeman on Judgments, (5th Ed., Vol. 1), pages 613-14:

"Quite generally bills and complaints to set aside or impeach the judgment, accompanied it may be with a prayer that its enforcement be enjoined, are regarded as direct proceedings."

And the same text, quoting from the case of Cotterell v. Koon, 151 Ind. 182, 51 N. E. 235, employs this language:

"An attack upon a judgment for fraud in its procurement is regarded as a direct attack which is permitted notwithstanding the decree or judgment questioned may appear upon its face in all respects regular and valid. It would certainly be a rare instance in which the decree would disclose the fraud or imposition upon the parties or upon the court."

And 34 C. J., Sec. 827, page 521, uses this language, based upon many cases cited in the appended note:

"Where the element of fraud or mistake is involved in the issue it is a general rule that the attack is direct."

Appellants also present the point that M. Mitter, as the successor in interest to the Coal Company and to Peters Trust Company, had no cause of action in his petition in case No. 608, whereby he could question the proceedings in case No. 272 on the ground of alleged fraud in the procurement of the decree therein. The case of Whitney v. Kelley, 94 Cal. 146, 29 Pac. 624, 15 L. R. A. 813, 28 Am. St. Rep. 106, is quoted from in the brief of counsel as supporting this proposition. However, in the later case of Emmons v. Barton, 109 Cal. 662, 42 Pac. 303, the same court had occasion to consider the rule announced in its previous decision, and said this:

"It is contended that respondent cannot maintain this action, because he has only an assignment of a bare right to sue in equity for a fraud committed on his assignors, and that such assignment is void as against public policy. There is no doubt of the general rule that a mere right to complain of fraud is not assignable; fraud not being a vendible

commodity. 1 Pars. Cont. 226; Story, Eq. Jur. Sec. 1040g; Cross v. Bank, 66 Cal. 462, 6 Pac. 94; Whitney v. Kelley, 94 Cal. 146, 20 Pac. 624. In Whitney v. Kelley, Jr., Justice Garoutte reviews a great many authorities upon the subject, and other cases to .the point are to be found in Crocker v. Bellangee, 70 Am. Dec. 489. But the rule in question, as established by the authorities, applies only to a case where the assignment does. not carry anything which has, itself, a legal existence and value, independent of the right to sue for a fraud. It does not apply to a case where the right to sue for a fraud is merely incidental to a subsisting, substantial property which has been assigned, and which is, itself, intrinsically susceptible of legal enforcement. An examination of the authorities—many of which are quoted and referred to in Whitney v. Kelley, supra— discloses that the rule in question does not govern in cases where the assignors 'have some substantial possession, and some capability of personal judgment, and not a mere naked right to overset a legal instrument or to maintain a suit.' ''

See also Kemp v. Enemark, 194 Cal. 748, 230 Pac. 441; Swallow v. Tungsten etc. Co., (Cal. App.) 265 Pac. 493.

In Yohe v. District Court, supra, this court made use of a quotation from the case of St. Lawrence etc. Co. v. Holt, 51 W. Va. 352, 41 S. E. 351, pertinent here, which reads:

''In a case in which it is questionable or debatable whether a court has jurisdiction, and it erroneously decides that it does have, its judgment and decree is erroneous and voidable only, and subject to correction only by proceedings in the court which rendered it, or by an appellate court, and is not void or open to collateral attack.''

Certainly it would seem that if it be argued that the failure to state a cause of action on behalf of M. Mitter in case No. 608, went to the jurisdiction of the District Court of Sweetwater County to render the decree it did in that case, that matter was at least ''questionable or debatable'' with the law being in the condition shown by the above authorities, and so not open to a collateral attack in the present suit. In this connection it should be noted that this court has also said, in the Yohe case:

"Jurisdiction of the court does not—as most of the courts hold—depend on the sufficiency of a pleading. 34 C. J. 154, 293, 452; 33 C. J. 1133, 15 C. J. 797; State v. Kusel, 29 Wyo. 287, 296, 213 Pac. 367, and a judgment cannot, ordinarily at least, be attacked collaterally, because the complaint did not state facts sufficient to constitute a cause of action, if it contained sufficient matter to challenge the attention of the court as to its merits."

In our judgment the petition in the Mitter case complied with this rule.

Something is said in the briefs concerning the failure of the court below to make a definite finding in the decree rendered in the litigation at bar relative to the decree in case No. 608, and its effect upon the rights of the parties thereto, but we do not regard this as important, in view of the fact that there was a general finding in favor of the plaintiff and a judgment accordingly.

Relative to the position of the appellants James F. Toy and Marion A. Kline, the suggestion is made that neither they nor their predecessor in interest, John Ballachey, were parties to the action in case No. 608, and so are not bound by it. But it will be recalled that Ballachey was a party to the subrogation suit brought by the Black etc. Co. against the Coal Company and others (case No. 272, supra), which culminated in the decree under which sale was had, and sheriff's deed issued to the property in dispute, to the Black etc. Co.

In that suit, Ballachey filed his answer and cross petition, seeking the foreclosure of the mortgage held by him. The decree made his claim upon the property involved that of a junior lienor, as regards the claim of the Black etc. Co. He unquestionably had the right to redeem from the sheriff's sale which was had pursuant to that decree. He never exercised that right. From the viewpoint of case No. 608, the Mitter case, the decree in case No. 272 was voidable for fraud, but nevertheless it was binding upon all parties who appeared in the action, so long as no attack was made upon it. Ballachey never heretofore, at any

time, questioned the validity of that decree. Neither he nor his assignees are now questioning it. Doubtless he had a right to waive any rights he might have possessed by reason of any fraud committed by the Black etc. Co. in connection with the procurement of the decree in case No. 272. Where injunctive relief in equity is granted only as to one of the parties to a judgment, still that will not prevent its enforcement against the others. 34 C. J. 500, Section 792, and cases cited. In Dougherty's Estate, 9 Watts & Sergeant (Pa.) 189, 42 Am. Dec. 326, Chief Justice Gibson, speaking of the rights of creditors as to a collusive judgment, remarked:

"Where a collusive judgment comes into collision with their interests, they may avoid the effect of it by showing it to be a nullity as to themselves; and in doing so, they do not impair its obligation between the original parties, upon whom it is undoubtedly binding, a fraudulent judgment, like a fraudulent deed, being good against all but the interests intended to be defrauded by it. But they can not call upon the court to vacate it on the record, which would annul it as to the whole world."

And this view of the matter is reiterated in 15 R. C. L. 858, Sec. 331, where it is said:

"When an attack is made on the ground of fraud, the obligation of the judgment is in nowise impaired, and as between the original parties it may continue to be binding, a fraudulent judgment, like a fraudulent deed, being good against all but the interests intended to be defrauded by it."

If the parties affected do not consider themselves injured by the alleged fraud and take no steps to obtain relief from it, it is difficult to see why they should be accorded also the right of those who invoke successfully the equitable remedy. We are not inclined to think that while acquiescing in the validity of the decree in case No. 272, Ballachey could meanwhile stand idly by and see the right of re-

demption provided by the statute for his protection slip from his grasp. He never redeemed from the sale, and his rights under his claim were, we think, lost. The fact that M. Mitter, the adjudged successor in interest to the Peters Trust Company, some years after the execution sale proceedings under the decree in case No. 272 were completed, was successful in vacating the decree in that case as against the Black etc. Co., could hardly, under the circumstances shown, give Ballachey and his assignees the right to have the property adjudged to Mitter sold under the decree of September 16, 1913, for their benefit.

The case of Bevans v. Dewey, 82 Iowa 85, 47 N. W. 1009, would appear in some respects pertinent here. There a previous mortgage foreclosure suit had been instituted by one Fullerton, who held both a first and third mortgage upon the property of Bevans. Mary G. Dewey, who owned the second mortgage on the land, was also made a defendant to the foreclosure proceedings and filed a cross petition, asking for the foreclosure of her mortgage. A decree was given directing the property to be sold and the proceeds applied to the satisfaction of the several mortgages in the order of their priority. The property passed to sale and brought only enough to satisfy the first mortgage. Afterwards the plaintiff, the widow of the mortgagor, purchased the interests of her deceased husband's heirs and redeemed from the sale. Mary G. Dewey failed to redeem and thereafter caused special execution to be issued upon the property for the satisfaction of her judgment upon her second mortgage. The land was sold to her and she ultimately received a sheriff's deed therefor. Plaintiff brought action to quiet her title, as against that obtained by Mary G. Dewey. In holding that the plaintiff should succeed, the court said in part:

"The principal question for our determination is, did the sale of Fullerton, the failure of defendant to redeem in the manner and within the time provided by law, and the acquiring of title and redemption by plaintiff terminate the

right of defendant to sell the premises to satisfy her judgment? We think her rights are the same as they would have been had she foreclosed her mortgage in an original proceeding, instead of doing so by means of a cross-petition in the action commenced by Fullerton. She was a party to the Fullerton decree, and is chargeable with notice of the sale under it. She had the opportunity of redeeming from it, but neglected to improve it. As a junior incumbrancer, by permitting redemption to be made, not by the judgment debtor, but by one who held title as his widow and as grantee of his heirs, she lost the right to enforce her judgment against the property so redeemed."

As the claim of John Ballachey was eliminated by his failure to exercise the right to redeem given him by law, his subsequent assignees necessarily received nothing. And the following sale of the property made in his behalf to his assignees was wholly ineffective to pass any title to them.

In view of what has above been said, it becomes unnecessary to consider questions which have been discussed at length in the briefs and which involve matters that might or could have been litigated in case No. 608—the Mitter case. Finally it may not be improper to remark here that nothing contained in this opinion should be construed as expressing an approval on our part of all the conclusions reached by the court below in case No. 608, on the merits of that litigation, or as indicating what our views would be if that cause were in regular form before us on direct attack by due and proper proceedings in error or on appeal.

Our conclusion upon the record now under consideration is that the judgment below should be affirmed, and it is so ordered.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.